[No. 6942-3-II. Division Two. April 14, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ROSALINA M. EDMONDSON, *Appellant.*

*John A. Strait,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Christian C. Casad, Deputy,* for respondent.

WORSWICK, C.J.—Rosalina Edmondson appeals her conviction of aggravated first degree murder. RCW 9A.32.030-(1)(a); RCW 10.95.020(5). The aggravating circumstance was that she had solicited, and had paid or agreed to pay Richard Manthie to commit the crime. Her primary contention is that the trial judge admitted hearsay in violation of the confrontation clause. U.S. Const. amends. 6, 14; Const. art. 1, § 22 (amend. 10). She also contends there was insufficient evidence to support her conviction, prosecutorial misconduct denied her a fair trial, the jury instruction on aggravated first degree murder was misleading, and she was unfairly denied the use of an interpreter at trial. We

affirm.

On December 29, 1981, police found the body of William Edmondson in a remote, wooded area of Kitsap County. Edmondson had been shot four times in the head, his chest had been crushed, and his nose broken. Drag marks led directly from his body to sets of boot prints and tire tracks.

Edmondson married Rosalina Manthie, an immigrant from the Philippines, on August 21, 1981. The day after the wedding, the Edmondsons drove from Washington to Montana, where Ms. Edmondson visited her former husband, Richard Manthie, an inmate of the Montana State Prison.

In September 1981, the Edmondsons bought $150,000 life insurance policies on each other's lives. Her policy's sole beneficiary was her daughter by Manthie; Edmondson's policy named his wife and the same daughter as beneficiaries. The Edmondsons then bought a house for $60,000 near Lake Symington; Ms. Edmondson already owned a house at Long Lake, but did not allow her husband to use it. The Edmondsons bought mortgage insurance for the Lake Symington house; the policy provided that if either of them died before repaying the mortgage, the insurance company would pay the mortgage balance.

Between August and December of 1981, Ms. Edmondson visited Manthie at the Montana State Prison several times. She actively supported his attempts to get parole, representing herself to parole authorities as his present wife. Manthie finally got parole on December 17, 1981, and immediately flew to Seattle. Ms. Edmondson paid for his airline ticket and met him at the airport. She and Manthie spent the night at a hotel and then went to her Long Lake house for the weekend.

Edmondson was seen the evening of December 21, 1981, driving from the Lake Symington house with Ms. Edmondson in his red Gremlin. Early the next morning, Ms. Edmondson was seen at the Long Lake house washing the Gremlin's interior. Her Long Lake neighbors noticed smoke issuing from the chimney of the house; they later testified that the smoke was too black to be woodsmoke. Ms.

Edmondson asked to use her neighbors' washing machine, something she had never done before.

When police found Edmondson's body 8 days later, they summoned Ms. Edmondson to the police station for questioning. She denied involvement in her husband's death and gave permission for officers to search her Long Lake house and the Gremlin. The next day she drove to Seattle to visit her lawyer. She instructed him to file claims on her husband's insurance policies.

Searching the Long Lake house, detective found Manthie's boots, which matched the prints at the place where Edmondson's body was found. They also found bits of glass, of a rare type, near a smashed door, and drops of blood on the floor of the Long Lake house. They found evidence that clothing had been burned both in the fireplace and outdoors. In the Gremlin, they found glass particles matching those found in the house, blood flakes of Edmondson's rare blood type, and hairs that were similar to Manthie's.

Manthie was arrested and charged with murdering Edmondson. Ms. Edmondson unsuccessfully tried to obtain his release on bail. While awaiting trial, Manthie became friendly with Jesse Noble, a cellmate. He told Noble that he and Ms. Edmondson had agreed to kill Edmondson in order to collect on the insurance policies. Manthie related that he had shot Edmondson while in the Gremlin and that Ms. Edmondson had helped him dispose of the body and destroy evidence of the murder. Manthie also related part of the story to Fred Stocker, another cellmate.

Ms. Edmondson was charged with Edmondson's murder in June 1982. She was represented at trial by two lawyers, one of whom is fluent in Tagalog, her native language. In addition, she was permitted to use an interpreter when she took the stand for cross examination.

In exchange for a favorable plea agreement on unrelated criminal charges, Noble testified against Ms. Edmondson, repeating what Manthie told him about the murder. Manthie did not testify. The parties stipulated that he would

claim his privilege against self–incrimination and thus was unavailable as a witness. After 3 weeks of trial, the jury convicted Ms. Edmondson of aggravated murder in the first degree.

## NOBLE'S TESTIMONY

Ms. Edmondson first argues that Manthie's statements to Noble were inadmissible hearsay. We disagree.

ER 804(b)(3) provides that hearsay statements are admissible if (1) the declarant is unavailable to testify, (2) the statements so far tend to expose the declarant to criminal liability that a reasonable person in the same position would not have made the statement unless convinced of its truth, and (3) corroborating circumstances clearly indicate the statement's trustworthiness. The rule itself only requires corroboration of statements exculpating the accused. Case law has imposed this requirement for inculpatory statements as well. *See State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982).

Manthie's statements to Noble fall within the scope of ER 804(a)(1) and ER 804(b)(3). First, Manthie was unavailable because he claimed his Fifth Amendment right not to testify at Ms. Edmondson's trial. *See State v. Toomey,* 38 Wn. App. 831, 838, 690 P.2d 1175 (1984), *review denied,* 103 Wn.2d 1012, *cert. denied,* 471 U.S. 1067, 85 L. Ed. 2d 501, 105 S. Ct. 2145 (1985). Second, Manthie's statement was against his penal interest because it implicated him as well as Ms. Edmondson in the murder. Third, corroborating circumstances clearly indicate the trustworthiness of the statements.

Briefly, the record shows overwhelming evidence that Manthie killed Edmondson. Among other things, his boot prints were found next to Edmondson's body, and hair similar to his was found in Edmondson's Gremlin. Ms. Edmondson's part in the murder is established by the evidence that she repeatedly visited Manthie in prison and helped him to get parole, because of the insurance she stood to benefit financially by her husband's death, she

spent the 3 days before the murder living with Manthie at her Long Lake house, she was the last person besides Manthie to see her husband alive, and she was seen washing the Gremlin's interior and burning something that later investigation showed was clothing the morning after her husband's disappearance. This evidence corroborates Noble's testimony. *See Parris,* 98 Wn.2d at 152 (corroborating circumstances, for purposes of ER 804(b)(3), can be found in other evidence of guilt). Therefore, Manthie's statements to Noble were admissible under ER 804.

### CONFRONTATION CLAUSE

Ms. Edmondson contends that even if Noble's testimony is admissible under ER 804, its admission violates the Sixth Amendment's confrontation clause. She makes several contentions related to this point, with all of which we disagree.

### I
### CONFRONTATION GENERALLY: THE PARRIS DUTTON–ALVAREZ TESTS

■ The confrontation clause is not an absolute bar to hearsay implicating the accused. *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980); *Parris,* 98 Wn.2d at 144. Hearsay is admissible in a criminal trial if (1) the declarant is unavailable, and (2) the statement bears adequate indicia of reliability. *Ohio v. Roberts,* 448 U.S. at 66; *Parris,* 98 Wn.2d at 145. Reliability is presumed if the evidence falls within a firmly rooted hearsay exception. Otherwise, the evidence must be excluded absent a showing of particularized guaranties of trustworthiness. *Ohio v. Roberts, supra; State v. Parris, supra.*

As discussed above, Manthie was unavailable to testify at Ms. Edmondson's trial because he pleaded the Fifth Amendment. *See State v. Dictado,* 102 Wn.2d 277, 287, 687 P.2d 172 (1984). Therefore, the only question is whether his statements to Noble bear adequate indicia of reliability. We cannot presume reliability because the ER 804 hearsay exception for statements against penal interest is not firmly rooted. *Parris,* 98 Wn.2d at 148. Therefore, Noble's testi-

mony is inadmissible as against the confrontation clause unless it bears particularized guaranties of trustworthiness.

To evaluate the trustworthiness of extrajudicial statements, the *Parris* court looked both to the circumstances of the declarations and to independent evidence that the declarations were truthful. The court adopted two sets of guidelines for examining the circumstances in which the statements were made. The first set comes from *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978). The second set was formulated by the Supreme Court in *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970).

The *Dutton–Alvarez* guidelines require the trial court to consider:

1. Whether the statement contains no express assertion of past fact, thus warning the jury not to accord it undue weight (*Dutton* No. 1);

2. Whether the declarant had personal knowledge of the identity and role of the other participants in the crime (*Dutton* No. 2);

3. Whether the declarant's statement was founded on faulty recollection (*Dutton* No. 3);

4. Whether the circumstances indicate that the declarant was telling the truth, including whether the statement was made spontaneously, whether the declarant had a motive to lie, and the degree to which the statement opposed his penal interest (*Dutton* No. 4, *Alvarez* Nos. 1, 4);

5. The declarant's general character (*Alvarez* No. 2);

6. Whether more than one person heard the statement (*Alvarez* No. 3);

7. The relationship between the declarant and the witness (*Alvarez* No. 5).

Applied to this case, guidelines 2, 3, 6, and 7 indicate that Noble's testimony was trustworthy. Manthie certainly had personal knowledge of the role played by the other participant in the murder (No. 2). Ms. Edmondson does not suggest that his statements to Noble were founded on faulty recollection (No. 3). Manthie told Stocker, as well as Noble, that he had murdered Edmondson (No. 6). As Ms.

Edmondson points out, Manthie did not tell Stocker that Ms. Edmondson was involved. However, Stocker heard enough to be able to corroborate many details of Noble's testimony. Further, Stocker testified that Manthie often talked to Noble about the murder. Finally, Manthie apparently regarded Noble as a trusted friend and confidant (No. 7). The defense conceded at oral argument that Manthie believed Noble would not repeat the story.

The other *Dutton–Alvarez* guidelines are inconclusive. First, Manthie's statements involved many assertion of past fact (guideline 1). The statements thus did not carry on their face a warning against giving them undue weight. *Dutton,* 400 U.S. at 89. However, defense counsel ensured that the jury would regard the statements skeptically; through his examination of Noble and other witnesses, he brought out testimony that Manthie had a vicious character and a motive to implicate Ms. Edmondson in the crime.

Second, the circumstances do not strongly indicate whether or not Manthie was telling the truth about Ms. Edmondson's participation. However, his statements to Noble were spontaneous; that is, he volunteered them. *See State v. Barber,* 38 Wn. App. 758, 766, 689 P.2d 1099 (1984), *review denied,* 103 Wn.2d 1013 (1985). Further, the statements were totally opposed to his penal interest; they amounted to a confession that he was guilty of first degree murder.

On the other hand, Manthie may have had a motive to lie. Noble testified that Manthie once called Ms. Edmondson from jail and discovered that she was living with a new boyfriend. He was enraged and told Noble he would punish her by implicating her in the murder. Ms. Edmondson contends that Manthie's jealousy led him to lie to Noble about her role in the crime. However, she offers no evidence that Manthie discovered her infidelity before he confided in Noble. The record suggests otherwise. Moreover, had Manthie wished to punish Ms. Edmondson, he would have told his story to the prosecutor, not to a cellmate. His belief that Noble would not inform is evident from the degree to which

he incriminated himself.

Third, Manthie's general character proves little (guideline 5). Manthie was undoubtedly cruel, greedy, and brutal, but the record does not show he was a liar. Ms. Edmondson asserts Noble was a habitual liar. However, Noble's character is irrelevant. The defense thoroughly cross–examined him, and exposed to the jury both his propensity for lying and the favorable plea bargain he received for testifying. On balance, the *Dutton–Alvarez* guidelines indicate that the hearsay was trustworthy.

## II
### OTHER EVIDENCE OF GUILT

Notwithstanding confusing statements in some earlier cases,[1] we think it unnecessary—and indeed inappropriate—to consider other evidence of guilt in making our confrontation analysis. We believe that the proper basis for this analysis, which emerges from a careful reading of United States Supreme Court decisions, is simply this: while the untrustworthiness that may exist in the untested statement of a witness can best be exposed by the test of cross examination, such a test may be superfluous where circumstances surrounding the making of the statement show that it is free from the risk of inaccuracy and untrustworthiness. It follows that where cross examination is not essential to test trustworthiness, the right of confrontation is not offended.

---

[1]*E.g., see State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984) (while enumerating various factors surrounding the statement itself, the court referred to defendant's own admissions and other evidence of guilt as additional factors of reliability of the out–of–court statement); *State v. Parris,* 98 Wn.2d at 152 (corroboration can be found in other evidence of guilt); *State v. Valladares,* 31 Wn. App. 63, 639 P.2d 813 (1982), *aff'd in part,* 99 Wn.2d 663, 664 P.2d 508 (1983) (rejects defendant's claim that corroboration be confined to the circumstances surrounding the out–of–court declaration).

In *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), relied on in *Valladares,* the Supreme Court did consider other evidence to corroborate reliability of certain hearsay statements. However, these statements, excluded at trial, were presented by the defendant on his behalf and the declarant was present at trial. Defendant's right to confront the witness was not involved.

Trustworthiness has been established in a variety of ways, none of which has included other evidence of guilt. *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970) (reliability of absent declarant's testimony was established by cross examination at preliminary hearing); *Ohio v. Roberts, supra* (though absent declarant was not cross-examined at earlier preliminary hearing, defense counsel's direct examination at that hearing comported with the purpose of cross examination and was sufficient to establish the requisite reliability of such testimony); *Dutton v. Evans, supra* (the Court relied solely on the four guidelines enumerated above to find the requisite indicia of reliability of the unavailable declarant's hearsay statement, without considering the testimony of the declarant's accomplice who directly and unequivocally implicated the defendant in the multiple murders).

Our Supreme Court recently shed some light on this subject. In *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), the court discussed the admissibility of a child victim's hearsay statement under the sexual abuse hearsay exception statute. RCW 9A.44.120. The court acknowledged that the requirements for admission of such a statement under the statute "comport with the general approach utilized to test hearsay against confrontation guaranties." *Ryan,* 103 Wn.2d at 170. The statute conditions admissibility of a statement of a child under the age of 10 on a showing that there is a sufficient indicia of reliability from the time, context and circumstances of the statement; moreover, if the child is unavailable as a witness, there must also be "corroborative evidence of the act." In rejecting the State's argument that the defendant's confession satisfied the showing of reliability of the child's statement, the court said:

> Adequate indicia of reliability must be found in reference to circumstances surrounding the making of the out-of-court statement, and not from subsequent corroboration of the criminal act. "The circumstantial guarantees of trustworthiness on which the various specific

exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." *Huff v. White Motor Corp.,* 609 F.2d 286, 292 (7th Cir. 1979). The trial court stated that it found reliability in the time, content, and circumstances of the statement, but in so finding indicated only one factor—the defendant's confessions. The trial court was apparently persuaded that the statements of the children must be reliable, if, in hindsight, they prove to be true. RCW 9A.44.120 demands more.

The statute requires separate determinations of reliability *and* corroboration when the child is unavailable. The word "and" is conjunctive. *State v. Carr,* 97 Wn.2d 436, 439, 645 P.2d 1098 (1982). The Legislature would have used the word "or" had it intended the disjunctive. *Childers v. Childers,* 89 Wn.2d 592, 575 P.2d 201 (1978); *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971). Although defendant's confession was offered as corroboration, wholly absent are the requisite circumstantial guaranties of reliability.

*Ryan,* 103 Wn.2d at 174.

■ The *Ryan* court relied on the guidelines for establishing trustworthiness enumerated in *State v. Parris, supra,* and *Dutton v. Evans, supra,* but excluded any consideration of other evidence of guilt. It found the child victim's statements wanting in trustworthiness, and concluded that the trial court erred in admitting them. The court's holding is persuasive, if not compelling, authority for the proposition that trustworthiness of a hearsay statement for purposes of confrontation requirements is to be determined only from the circumstances surrounding the statement and not from other evidence of guilt.

### III
### CRUCIAL/DEVASTATING ARGUMENT

Ms. Edmondson argues that Noble's statements were inadmissible because they were crucial to the prosecution's case and devastating to the defense. She relies upon *Dutton v. Evans, supra.* We disagree.

 We do not believe *Dutton* holds this evidence admissible only if it is trivial, *i.e.*, not crucial or devastating. In any event, 10 years after the plurality opinion in *Dutton* alluded to crucial and devastating evidence, a majority of the Court held that the confrontation clause does not bar hearsay that meets the tests of necessity and reliability. *Ohio v. Roberts, supra.* The *Roberts* Court accepted hearsay that was crucial to the prosecution's case. Assuming *Dutton* barred crucial or devastating evidence, that bar was abandoned in *Roberts. See State v. Barber,* 38 Wn. App. at 767.

## IV
### State Constitution

 Ms. Edmondson argues that admission of Noble's testimony violates article 1, section 22 of the state constitution, contending that this provision affords greater protection to the accused than does the confrontation clause. She appears to suggest that Washington's appellate courts have not yet considered this possibility. This is not so. Our State Supreme Court has explicitly considered the relationship between the confrontation clause and Const. art. 1, § 22 (amend. 10). *State v. Parris, supra.* Justice Williams, who dissented in *Parris,* reasoned that Const. art. 1, § 22's reference to face–to–face confrontation is evidence that Washington law requires stricter tests for hearsay than does federal law. His view did not prevail. Further, even Justice Williams did not suggest that article 1, section 22 bars *all* hearsay. We decline to hold that the state constitution bars admission of Noble's testimony, when the federal constitution does not.[2]

---

[2]Ms. Edmondson also relies on two Oregon cases, *State v. Smyth,* 286 Or. 293, 593 P.2d 1166 (1979) and *State ex rel. Gladden v. Lonergan,* 201 Or. 163, 269 P.2d 491 (1954). *Lonergan* is not on point. In *Smyth,* Justice Hans Linde, writing for the majority, stated there was no difference in meaning between Oregon's "face–to–face" confrontation clause and its federal counterpart. 593 P.2d at 1168 n.3.

## V
## MISCELLANEOUS ARGUMENTS

Finally, Ms. Edmondson argues: (1) it was constitutional error to admit Noble's and Stocker's testimony, because their testimony might have been excluded had Manthie chosen to testify; (2) the State had a duty to compel Manthie to testify by granting him immunity;[3] and (3) the court erred in failing to instruct the jury that statements of alleged accomplices to crimes (*i.e.*, Manthie) are inherently untrustworthy. These arguments are supported neither by reason nor authority. No further discussion is necessary.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PETRICH and ALEXANDER, JJ., concur.

Reconsideration denied May 22, 1986.

Review denied by Supreme Court September 2, 1986.

---

[3]A defendant does not have a right to compel the granting of immunity to a witness. *State v. Mannhalt,* 33 Wn. App. 696, 658 P.2d 15 (1983); *State v. Matson,* 22 Wn. App. 114, 587 P.2d 540 (1978).