[No. 52654–1.   En Banc.   February 26, 1987.]

THE STATE OF WASHINGTON, *Petitioner,* v. JOHN
FREDRICK ANDERSON, *Respondent.*

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for petitioner.

*David W. Murdach,* for respondent.

PEARSON, C.J.—The question in this case is whether hearsay statements made by a nontestifying codefendant manifest sufficient indicia of reliability to be introduced into evidence without violating the defendant's Sixth Amendment right to confront witnesses. The State, as petitioner, contends that the hearsay at issue is admissible because it falls within the hearsay exception for statements against penal interest, ER 804(b)(3). The respondent argues, however, that even if the statements satisfy the rules of evidence, they fail to satisfy the additional reliability requirements imposed by the Sixth Amendment's confrontation clause. We disagree with the respondent and reverse.

## FACTS

The facts are set out in greater detail in *State v. Anderson,* 41 Wn. App. 85, 702 P.2d 481 (1985). Briefly, respondent Anderson was convicted on several counts of aggravated first degree murder and first degree assault for shooting patrons at the Yorktown Restaurant in Tacoma in late 1979. Anderson's codefendant, Robert Stratton, was tried jointly with Anderson and was also convicted.

The prosecution's theory of the case was that the shootings were the product of a conspiracy between Anderson and Stratton. The goal of the conspiracy was to intimidate a Joyce Hernandez both into keeping quiet about the contract killing of her husband, which Stratton had performed for her, and into continuing to pay Stratton for the killing. *See Anderson,* at 89–90.

The evidence supporting the prosecution's theory was the following: Sometime in the second week of December 1979, Hernandez had confided in Jim Hall, a bartender at the Yorktown, about her own and Stratton's participation in her husband's murder. Fearful that Stratton would learn of the disclosure secondhand and be angry about it, and in hopes of mitigating Stratton's anger, Hernandez herself told Stratton about the disclosure. On December 18, between 8 and 9 p.m., Hernandez and her mother went to

the Yorktown for a drink. Hernandez had made prior arrangements to meet friends at the restaurant at about 10 p.m. Jim Hall was tending bar that evening. Shortly after Hernandez' arrival, a person wearing a ski mask over the face entered the Yorktown and fired on six customers, killing three. Two days after the shooting, according to Hernandez, Stratton told her that "he hoped I learned something, he couldn't annihilate the whole town of Tacoma because of my big mouth." He also told her that "Jim Hall was lucky because he was not behind the bar where he was supposed to be." Report of Proceedings, vol. 5, at 41.

Anderson and Stratton were indicted for the murders and assaults based on information supplied by Larry White, a former roommate, and on physical evidence discovered in a search of the defendants' residence. The State argued that Anderson was the actual gunman in the conspiracy, offering as evidence testimony by White and Hernandez and descriptions of the gunman offered by Yorktown patrons who witnessed the shootings.

The evidence at issue in this appeal consists of hearsay testimony helping to implicate Anderson as the actual gunman. The testimony was given by White and consisted of statements made to him by Stratton.[1] *See Anderson,* at 92

---

[1]The portions of White's testimony that are challenged consist of the following italicized statements:

Prosecutor: "And what was said during [your] conversation [with Stratton]?"

White: "I asked [Stratton] why it had happened, why John [Anderson] done this, and he said *it was a demonstration to prove a point.*"
"He stated that *John stood there and popped them off like he was on a shooting range.*"

Prosecutor: "Did you have any other conversations with either of them concerning this shooting?"

White: "I had a further conversation with Bob [Stratton] sometime after the shooting that *Anderson was paranoid about my having knowledge of what he had done, and he was afraid I was going to be put in a position of telling on him.*"

Prosecutor: "Between the 18th of December and 25th of December, did you have any other conversations with either of them concerning either of them having been to the Yorktown prior to the 18th?"

n.2. Stratton had made the statements shortly after the shooting, while White was living with Stratton and Anderson. One of the statements was made the day after the shooting; others were made several days later; another, a few weeks later. Each of the statements was made prior to police suspicion focusing on the codefendants.

White was not only a roommate of Anderson's and Stratton's but was also a criminal coconspirator with them. Less than a week before the Yorktown shootings White had driven the getaway car in an armed robbery he committed with Anderson. Less than a month after the Yorktown shootings White participated with both defendants in an armed robbery.

White was subsequently arrested in connection with additional robberies. In return for immunity, White discussed the Yorktown shootings with the police and agreed to testify against Anderson and Stratton. *Anderson,* at 90–91.

After the defendants were indicted, Anderson moved for severance and a separate trial, pursuant to CrR 4.4(c)(1). CrR 4.4(c)(1) generally requires severance when a codefendant's out–of–court statement is to be introduced against the codefendant but is inadmissible against the

---

White:   "Prior to the 18th? Bob told me in one of those conversations that *he and Phyllis and John had gone down there early in the day that day, the day of the shooting, and they went down to have lunch so John could case the layout of the place.*"

Prosecutor: "Can you recall any other conversations during the period of time that I have indicated, the 18th of December to the 25th?"

. . .

White:   "I overheard a conversation between John and Bob which took place in the kitchen. I was sitting on the couch in the front room, and it's right around the partition to my right, right behind me three or four feet, the kitchen. And John and Bob were talking about it, and Bob told John that *he really impressed her. He had talked to someone about it, and he had impressed her, frightened her.*"

Report of Proceedings, vol. 6, at 22–23. The respondent does not argue that the statements are inadmissible under ER 804(b)(3) but only that the statements fail to satisfy the added requirement of trustworthiness the confrontation clause imposes on declarations against penal interest.

defendant. Anderson argued that White's testimony of statements made by Stratton was admissible only against Stratton and not against the respondent. The trial court denied the motion, holding that Stratton's statements to White were admissible against Anderson under ER 801-(d)(2)(v). That rule provides for the admission of statements by a coconspirator "during the course and in furtherance of the conspiracy." *See Anderson,* at 102–03.

On appeal, the Court of Appeals reversed, holding that the statements to White were not in furtherance of the conspiracy. *Anderson,* at 105. In its motion for reconsideration and in its petition for discretionary review, the State has argued that even if the statements do not fall within ER 801(d)(2)(v), they are admissible as declarations against penal interest, one of the hearsay exceptions set forth in ER 804(b)(3). The respondent counters that, assuming the statements fall within the penal interest exception,[2] they nevertheless do not survive confrontation clause scrutiny: statements against penal interest are admissible only if they are accompanied by indicia of reliability or trustworthiness. The respondent argues that the State has failed to demonstrate that the statements in this case bear such indicia. The sole issue before us, then, is whether Stratton's statements to White satisfy any additional requirements that the Sixth Amendment may impose on the admissibility of statements against penal interest.

## ANALYSIS

The respondent correctly observes that the rules of evidence do not circumscribe the limits of constitutional rights. *California v. Green,* 399 U.S. 149, 155–56, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970); *see State v. Parris,* 98 Wn.2d 140, 165, 654 P.2d 77 (1982) (Williams, J., dissenting). Thus, out–of–court statements that are admissible under

---

[2] ER 804(b)(3) requires that (1) the declarant be unavailable as a witness, and (2) the statement "at the time of its making . . . so far [tend] to subject [the declarant] to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

one of the hearsay exceptions will not necessarily satisfy Sixth Amendment requirements. *California v. Green, supra.*

█ In the case of a nontestifying codefendant's statements against penal interest that additionally inculpate the defendant, the statements are admissible against the defendant only when they bear "adequate 'indicia of reliability.'" *Parris,* at 145 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980)); *see also State v. Dictado,* 102 Wn.2d 277, 287–88, 687 P.2d 172 (1984). Put differently, the statements must manifest "particularized guarantees of trustworthiness". *Parris,* at 148.

This court has articulated a number of factors to be considered in determining the reliability or trustworthiness of out-of-court declarations. The factors are: (1) whether the declarant had an apparent motive to lie; (2) whether the general character of the declarant suggests trustworthiness; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) whether the timing of the statements and the relationship between the declarant and the witness suggest trustworthiness. *State v. Ryan,* 103 Wn.2d 165, 175–76, 691 P.2d 197 (1984); *Parris,* at 146 (citing *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978)); *see also State v. Edmondson,* 43 Wn. App. 443, 449, 717 P.2d 784, *review denied,* 106 Wn.2d 1016 (1986). Factors to be considered in conjunction with those above are: (1) whether the statements contained express assertions of past fact; (2) whether cross examination could not help to show the declarant's lack of knowledge; (3) whether the possibility of the declarant's recollection being faulty is remote; and (4) whether the circumstances surrounding the statements give no reason to suppose that the declarant misrepresented the defendant's involvement. *Ryan,* at 176 (citing *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)); *see Parris,* at 145–46; *see also State v. Edmondson, supra.*

The purpose of this inquiry into trustworthiness is to ensure that the proffered evidence offers some reliability in

terms of the declarant's perception, memory, and credibility—a function traditionally performed by cross examination. *See Parris,* at 144.

> [T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth–determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."

(Citation omitted.) *Parris,* at 146 (quoting *Dutton v. Evans,* 400 U.S. at 89). Thus, our focus is on the circumstances surrounding the statement and its maker. *Ryan,* at 174; *see Edmondson,* at 451–53. We are not concerned with collateral issues, such as the testifying witness' reliability or other evidence of the defendant's guilt unrelated to the circumstances surrounding the statements. The witness is subject to oath, cross examination, and observation of his demeanor; he can be tested before the trier of fact for bias, deficient memory, or poor perception or narration. *See Dutton v. Evans, supra* at 88; *see also Lee v. Illinois,* __ U.S. __, 90 L. Ed. 2d 514, 526, 106 S. Ct. 2056 (1986); *Edmondson,* at 451; *see generally* E. Cleary, *McCormick on Evidence* § 245 (3d ed. 1984). The weight of all unrelated evidence of guilt bears only on whether any error in admitting the hearsay is harmless, and not on whether the admission is actually error. *See Lee,* 90 L. Ed. 2d at 530. *But cf. Lee,* 90 L. Ed. 2d at 535–36 (Blackmun, J., dissenting). Thus,

> Adequate indicia of reliability must be found in reference to circumstances surrounding the making of the out–of–court statement, and not from subsequent corroboration of the criminal act. "The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." *Huff v. White Motor Corp.,* 609 F.2d 286, 292 (7th Cir. 1979).

*Ryan,* 103 Wn.2d at 174; *see also Edmondson,* at 452–53. Thus where, as here, the State has offered other evidence of

the defendant's guilt, we need not consider and weigh that evidence but instead may properly confine ourselves to the circumstances of the statements. If the statements do prove inadmissible, then of course we must examine the other evidence of guilt to determine if the defendant suffered prejudice.

The first and perhaps most important fact in this case is that each of Stratton's statements to White was made prior to any suspicion by Stratton that either Anderson or he were considered suspects in the Yorktown shooting. These were not statements made in police custody, nor were they statements made after police suspicions had been aroused. *See Lee v. Illinois, supra; Parris,* at 151; *cf. State v. Hoak,* 107 Idaho 742, 747, 692 P.2d 1174 (1984). It is also highly significant that White was a roommate of Stratton's at the time of the statements and shortly thereafter participated with Stratton in a robbery; the relative intimacy of their relationship would suggest Stratton would be trustworthy in his comments to White. *See State v. Barber,* 38 Wn. App. 758, 766, 689 P.2d 1099 (1984), *review denied,* 103 Wn.2d 1013 (1985). White additionally would be a likely recipient of Stratton's confidences about the Yorktown, for White, like Stratton, had participated in a crime with Anderson. Thus, in considering the timing and spontaneousness of the statements and the relationship between the declarant and the witness, we are inclined to find the statements reliable.

Moreover, it is unapparent why Stratton would lie about Anderson's involvement in the shooting, for no blame or suspicion had yet fallen on Stratton. Because Stratton was the one who had the motive to intimidate Hernandez, connecting Anderson to the crime could only serve to connect Stratton himself. In addition, we note that although Stratton could not be said to be of good character, we have no

reason to believe he was untruthful with his criminal coconspirators. Our concern here is with his general trustworthiness in circumstances such as the ones here, and not his overall propensity toward virtue. *See Barber,* at 765; *cf. United States v. Brainard,* 690 F.2d 1117, 1124 (4th Cir. 1982) (interpreting Fed. R. Evid. 804(b)(3) to hold that "[i]t is the statement rather than the declarant which must be trustworthy"). And none of the circumstances point to any "reason to suppose the declarant [Stratton] misrepresented defendant's [Anderson] involvement." *See Ryan,* at 176.

Finally, there is little likelihood that Stratton's memory would have been faulty. Very little time had passed between the shootings and his statements, and the subject matter of the statements—events pertaining to the shootings—were of no small significance to him.

We concede that not all the indicia of reliability set forth in *State v. Ryan* are present here. However, we are satisfied that sufficient "particularized guarantees of trustworthiness" are present to make the hearsay admissible. *See Parris,* at 148. The fact that the statements at issue were made to a confidant prior to any police suspicions arising weighs heavily in favor of reliability.

CONCLUSION

Because the statements were admissible against the respondent, severance was not mandated in this case. *See* CrR 4.4(c)(1); *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). The respondent has failed to offer persuasive evidence of undue prejudice from the joint trial, and thus we find no abuse of discretion in the trial court's denial of the motion to sever. *See State v. Grisby,* 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington,* 459 U.S. 1211 (1983). For these reasons, we reverse the decision of the Court of

Appeals and reinstate the trial court's judgment and sentence.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied June 18, 1987.