[No. 24886-3-I.   Division One.   May 20, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRELL CHERRY, *Appellant*.

*Richard Hansen, David Allen, Roy Roistacher,* and *Allen & Hansen, P.S.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca Roe, Deputy,* for respondent.

FORREST, J.—Darrell Cherry appeals his convictions for attempted first degree murder and endangering life and property with explosives. Cherry claims the court erred by admitting evidence obtained in an illegal search, giving improper jury instructions, allowing improper opinion testimony, denying a new trial based on prosecutorial misconduct, and excluding relevant evidence. We affirm.

Cherry was accused of delivering a bomb to Fritzi Davis, his ex–wife. Ms. Davis and her current husband, Danny Davis, were injured by the bomb April 8, 1988.

Cherry and Ms. Davis have a history of bitter fights and legal battles since their separation in 1983. Cherry threatened to harm Ms. Davis on numerous occasions. After the explosion, Mr. and Ms. Davis told police investigators that they believed Cherry had sent the bomb.

The police contacted Cherry the day after the bombing. Cherry reluctantly consented to a search of his residence and agreed to a polygraph examination. The police seized materials that could be used to construct bombs. Cherry and his alibi witness voluntarily underwent polygraph

examinations, in which both were found to be attempting deception.

A subsequent warrant was obtained and Cherry's residence was searched June 3, 1988. The police removed numerous tools and materials that could be used to construct bombs. The police also found a formula for a liquid explosive and details for obtaining the ingredients, $8,000 cash, emigration papers to Australia, and a book describing methods of changing one's identity.

Cherry's request to suppress the evidence obtained in the second search was denied. The jury in Cherry's first trial on the charges deadlocked. Cherry was convicted after a second trial. A motion for retrial was denied. Cherry was sentenced to a 240–month prison term.

### PROBABLE CAUSE TO SUPPORT SEARCH WARRANT

Cherry makes several arguments that the second search warrant was granted without a proper basis. First, he contends that deliberate falsehood or reckless misrepresentation requires a hearing and suppression of the evidence.

In the affidavit supporting probable cause for the second search, the police officer stated that the Bureau of Alcohol, Tobacco and Firearms (ATF) examined the evidence recovered from the bomb site and the evidence taken from the defendant's home in the first search and found "similar and usual common characteristics between" the items. In fact, the ATF labs found no similarities in the materials.

Applying the "delete and retest" rule[1] the trial court found the statements misleading and that Cherry had made a threshold showing of deliberate or reckless misrepresentation. With the offending section deleted, the affidavit contains facts of the bombing, the victim's allegation that Cherry had sent the bomb, several corroborated death threats by Cherry and the fact that he and his alibi witness had attempted deception during polygraph examinations. The court could also consider the fact that the ATF labs

---

[1]See *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978); *State v. Cord*, 103 Wn.2d 361, 693 P.2d 81 (1985).

and police had attempted to reconstruct the bomb delivered to Davis, and a second more sophisticated search was justified. The court concluded that all of these facts, taken together, created sufficient probable cause to issue the warrant. We agree.

The affidavit in support of a search warrant must contain facts sufficient to lead a reasonable person to conclude there is a probability that the defendant is involved in criminal activity.[2] Probable cause requires only a probability of criminal activity and not a prima facie showing of guilt.[3] The affidavit must be read in a commonsense manner and doubts should be resolved in favor of the warrant.[4] The magistrate, and the trial court, are entitled to draw reasonable and commonsense inferences from the facts in the affidavit.[5]

Cherry argues that since polygraph examination results are admissible at trial in only extremely limited circumstances,[6] there should be a complete bar to their use to support probable cause to search a suspect's home. We disagree.

The reasons for excluding polygraph results at trial do not apply to a search warrant affidavit. The rules of evidence do not apply to warrant proceedings.[7] There is no

---

[2]*Cord,* at 365.

[3]*State v. Seagull,* 95 Wn.2d 898, 632 P.2d 44 (1981).

[4]*State v. O'Connor,* 39 Wn. App. 113, 692 P.2d 208 (1984), *review denied,* 103 Wn.2d 1022 (1985).

[5]*State v. Helmka,* 86 Wn.2d 91, 542 P.2d 115 (1975).

[6]*See State v. Renfro,* 96 Wn.2d 902, 639 P.2d 737, *cert. denied,* 459 U.S. 842 (1982).

[7] "(c) When Rules Need Not Be Applied. . . .
    "(3) *Miscellaneous Proceedings.* . . . preliminary determinations in criminal cases; . . . issuance of warrants for arrest, criminal summonses, and search warrants; . . .." ER 1101.

concern that a jury will be prejudiced.[8] While admissibility of polygraph results at trial is strictly limited, it is recognized that they have probative value.[9] Polygraph examinations have long been recognized as valid and important police investigative tools.[10] Even recognizing that polygraphs are not foolproof, it is striking that not only did Cherry show deception on the polygraph but his alibi witness did the same. The trial court recognized the limitations on use of polygraphs stating, "[w]hile the exam results themselves would not be admissible as evidence at trial, they would be evidence that a court could look at in making a probable–cause determination."

In *State v. Anderson*[11] the court implied that polygraph results may have probative value in supporting the credibility of an informant in a warrant affidavit. A recent case in Oregon[12] and an unpublished decision in Ohio[13] expressly hold that polygraphs do have probative value and the results may be utilized to bolster the reliability of an informant. The credibility of an informant differs from incrimination of a suspect, but the rationale of the cases remains valid. Cherry cites no authority to the contrary. Recently this court has approved informing the jury that a

[8]*See Industrial Indem. Co. of Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520 (1990). While this case discusses excluding evidence that an insured refused to submit to a polygraph during an arson investigation, the court's analysis suggests that polygraphs can be probative, but the chief concern remains the risk of jury prejudice. *See also State v. Anderson,* 41 Wn. App. 85, 95, 702 P.2d 481 (1985), *rev'd on other grounds,* 107 Wn.2d 745, 733 P.2d 517 (1987).

[9]*See Renfro,* at 906.

[10]*See State v. Sutherland,* 94 Wn.2d 527, 528, 617 P.2d 1010 (1980); *State v. Pleasant,* 21 Wn. App. 177, 583 P.2d 680 (1978), *cert. denied,* 441 U.S. 935 (1979).

[11]41 Wn. App. 85, 702 P.2d 481 (1985), *rev'd on other grounds,* 107 Wn.2d 745, 733 P.2d 517 (1987).

[12]*State v. Coffey,* 309 Or. 342, 788 P.2d 424 (1990).

[13]*State v. Grim,* No. 80 CA 14, No. 80 CA 15 (Ohio Ct. App. July 24, 1981) (1981 Westlaw 2862).

medical examiner considered a polygraph examination in determining the cause of death.[14] We hold the court did not err permitting consideration of the polygraph examination results to determine probable cause.

Cherry's conviction and sentence for attempted first degree murder and endangering life and property with explosives is affirmed.

The panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WEBSTER, A.C.J., and PEKELIS, J., concur.

Reconsideration denied June 26, 1991.

---

[14]*State ex rel. Taylor v. Reay,* 61 Wn. App. 141, 810 P.2d 512 (1991).