[No. 20529-3-I.   Division One.   September 6, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. RANDY BRUCE GEE, *Appellant.*

*Gene M. Grantham,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Allen Shabino, Deputy,* for respondent.

SCHOLFIELD, C.J.—The defendant, Randy Gee, appeals his conviction for delivery of cocaine, a violation of the Uniform Controlled Substances Act. We affirm.

## FACTS

Detective Charles Vance, a Bellevue police officer working under cover, was assigned to a special investigations

narcotics unit. In July 1985, a confidential informant introduced Vance to Lea Ann Barrey, and Vance made a small purchase of cocaine at that time.

In September 1985, Vance negotiated with Barrey for a larger purchase of cocaine. He met with her on September 13, 1985, in a parking lot, to receive the cocaine. Vance testified that after he parked his car, Barrey got in and talked with him about the purchase. She told Vance that she was with her friend, Nick, who had the cocaine. She also told Vance that he would be referred to as "Jerry" and that she had told Nick that she and Vance had dated in the past and that he owned a computer store. She said that if she told Nick this, he would be easier to deal with in the future, and since she was moving to Florida, Nick would be a good source for Vance. Vance refused to give Barrey the money before seeing the cocaine, so Barrey got out of the car. A few minutes later, Barrey drove back and parked next to Vance. A man whom Vance identified at trial as Gee was with her. Barrey and Gee approached Vance's car, and Barrey sat in the right front passenger seat, and Gee got in the right rear. Barrey introduced Gee as "Nick" and Vance as "Jerry." Vance mentioned that he was interested in putting together a larger deal, and again Barrey stated that Gee would be a good source for him. Vance counted out his money for them and then asked to see the cocaine. Gee said that it was over by a tree and that they could walk over and get it. Vance said he did not want to go to a "dark tree" but that he would wait if Gee wanted to get it. Gee got into Barrey's car, drove away, and then returned a few minutes later with a plastic bag under his coat. Vance asked to see it, and Gee handed him the cocaine. Then Vance gave the "bust" signal, and officers who had been conducting surveillance arrested Gee, Barrey, and Vance. Vance was arrested to protect the informant.

Gee testified that he was present solely to purchase a small quantity of cocaine from Barrey, with no intent to sell or deliver cocaine. He also testified that Barrey asked him to meet Vance, who might be a future source of cocaine

to him. Gee accompanied Barrey to Vance's automobile, where he was introduced as "Nick" and Vance was introduced as "Jerry". At the urging of Vance and Barrey, Gee retrieved the cocaine from the tree, where Barrey had hidden it earlier. A discussion then ensued between Barrey and Vance concerning the cocaine transaction. Gee testified that at that point, he indicated that he wished to leave the vehicle. Then Vance gave the "bust" signal and they were arrested.

Gee was charged by information filed July 25, 1986, with violation of the Uniform Controlled Substances Act, contrary to RCW 69.50.401(a). Barrey left the jurisdiction prior to trial.

At trial, the defense sought to introduce a number of allegedly exculpatory statements made by Barrey and overheard by Charles Joslin, who was a housemate of Barrey's and did not know Gee. The proposed testimony was that Joslin was moving his belongings out of the house when he overheard "bits and pieces" of a conversation between Gee and Barrey about the arrest that had occurred 2 days prior. Barrey was crying and apologized repeatedly to Gee for involving him in the incident in question, saying that he "should not have been there" and that he was not involved. Joslin also recalled someone making a statement that Gee or someone was only there to buy a gram, but he could not recall who made the statement. Also, Joslin asked Barrey if Gee was involved, and Barrey said no. The trial court excluded the evidence as hearsay.

Over Gee's objection, the trial court allowed the State to present the testimony of Detective Vance that Barrey had stated outside the presence of Gee that Gee had the cocaine for sale to Vance and that Gee would be a good source of large quantities of cocaine in the future.

Before the trial, Gee made a motion to dismiss the case based upon the preprosecution delay. This motion was denied. Although Gee and Barrey were arrested in September of 1985, Detective Vance did not refer the case for prosecution until April of 1986. This delay was to protect

the informant. The informant provided no information about Gee directly; however, Vance testified that in his experience, the drug community was highly interconnected and that the delay in filing was necessary to protect the identity of the informant. Moreover, Vance testified that the informant was providing information about other persons that were known to Barrey. Vance stated that he tried to strike a compromise between the need to protect the informant's identity and the need to timely refer the case for prosecution.

On March 23, 1987, Gee was found guilty as charged. This appeal timely followed.

### ADMISSIBILITY OF EXCULPATORY STATEMENTS

Gee argues that the trial court should have admitted Joslin's testimony that he had overheard Barrey make exculpatory statements regarding the incident, because the statements were trustworthy and were crucial to Gee's defense of lack of predisposition to deliver cocaine.

ER 804(b)(3) provides:

**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In order for a statement to be admitted under ER 804(b)(3), three basic prerequisites must be fulfilled. First, the declarant must be unavailable despite good faith efforts to locate him or her. Second, the statement must so far tend to subject the declarant to criminal liability that a

reasonable person would not have made the statement unless he believed it to be true. Finally, the statement must be corroborated by circumstances clearly indicating its trustworthiness. *State v. Valladares,* 99 Wn.2d 663, 668, 664 P.2d 508 (1983) (citing *United States v. Sarmiento–Perez,* 633 F.2d 1092, 1098 (5th Cir. 1981)). The determination of admissibility under rule 804(b)(3) is committed to the sound discretion of the trial court. *United States v. Hoyos,* 573 F.2d 1111, 1115 (9th Cir. 1978).

It is undisputed that the first prerequisite of unavailability has been met. However, the State argues that the second and third requirements of criminal liability and trustworthiness are not present.

We find that the trial court properly exercised its discretion in excluding the offered testimony because the statements were not against Barrey's penal interest. While the reach of rule 804(b)(3) is not limited to direct confessions of criminal responsibility, the declarant's statements must, in a real and tangible way, subject him to criminal liability. *United States v. Hoyos, supra* at 1115. The only statements offered were Barrey's repeated apologies, presumably to Gee, that he should not have been there and Barrey's negative response when asked by Joslin if he was involved. The statements contain no express assertions of past fact that could incriminate Barrey. She had already been arrested in the middle of a drug transaction. It does not improve the case against her to state that a third party was not a participant and should not have been present.

Moreover, the statements do not bear "'adequate "indicia of reliability."'" *See State v. Anderson,* 107 Wn.2d 745, 750, 733 P.2d 517 (1987). The following factors are to be considered in determining the reliability or trustworthiness of out–of–court declarations: (1) whether the declarant had an apparent motive to lie; (2) whether the general character of the declarant suggests trustworthiness; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) whether the timing of the statements and the relationship

between the declarant and the witness suggest trustworthiness. *State v. Anderson, supra* at 750. Factors to be considered in conjunction with those above are: (1) whether the statements contained express assertions of past fact; (2) whether cross examination could not help to show the declarant's lack of knowledge; (3) whether the possibility of the declarant's recollection being faulty is remote; and (4) whether the circumstances surrounding the statements give no reason to suppose that the declarant misrepresented the defendant's involvement. *State v. Anderson, supra* at 750.

The purpose of this inquiry into trustworthiness is to ensure that the proffered evidence offers some reliability in terms of the declarant's perception, memory and credibility—a function traditionally performed by cross examination. *See State v. Parris,* 98 Wn.2d 140, 144, 654 P.2d 77 (1982).

Applying the above factors to the facts at bar, we find that the statements were not trustworthy. Although Barrey did not have an apparent motive to lie, and more than one person was present when the statements were made, her general character and her relationship to Joslin do not suggest trustworthiness. Joslin testified that he was moving out because Barrey had stolen property from him in the past and implied that she tried to sell some of his firearms. Also, Barrey's statements were made shortly after she made contradictory statements to Vance. Her involvement in drug trafficking and her lies about Gee's and Vance's names and relationship to her during the transaction further indicate a lack of veracity. Whether the statements were spontaneous is unclear because they were made under circumstances suggesting Gee had put Barrey in a defensive posture by making accusations or threats that had her emotionally upset. Furthermore, although Barrey's recollection was probably not faulty and cross examination would not show lack of knowledge, her statements are ambiguous and fragmented. Finally, the circumstances surrounding the statements suggest that the statements were designed to pacify or placate Gee, who was angry with Barrey due to his

arrest. In these circumstances, we find that the trial court did not abuse its discretion in refusing to admit the testimony under the declaration against penal interest exception of rule 804(b)(3).

### ADMISSIBILITY OF INCULPATORY STATEMENTS

Gee next argues that Barrey's statements to Vance made outside of Gee's presence that Gee had the cocaine for sale to Vance and that Gee would be "a good source" did not bear sufficient indicia of reliability to warrant their admission under ER 804(b)(3).

█ The Washington State Supreme Court has aligned itself with the weight of federal case authority holding that inculpatory statements are admissible under the same standard ER 804(b)(3) sets for exculpatory statements. *State v. Valladares,* 99 Wn.2d 663, 668, 664 P.2d 508 (1983).

The State cites *State v. Bradbury,* 38 Wn. App. 367, 685 P.2d 623 (1984) as support for its argument that the declaration was properly admitted. In *Bradbury,* an undercover police officer had negotiated with a Mr. Porco for the purchase of a large quantity of marijuana. The officer was to take delivery of the marijuana at Porco's residence, and when the defendant drove up, Porco remarked, "'That's the man we are looking for'". *State v. Bradbury, supra* at 369. The court held that sufficient indicia of reliability existed to support the admission of this statement under ER 804(b)(3). The court in *Bradbury* reasoned that the declarant, Porco, knew or should have known he was engaged in criminal conduct and that his statements could be used in court against his penal interest. His statements were in furtherance of the crime of delivery of a controlled substance and were relevant to prove a delivery was going to be made and by whom. He was satisfied he was dealing with a bona fide purchaser, so there was no apparent motive for him to lie. The statements were made spontaneously in order to complete a transaction in which he had a vested interest and into which he had voluntarily entered. The

surrounding circumstances thus support the trustworthiness of the statements. *State v. Bradbury, supra.*

Similarly, in the present case, the declarant, Barrey, knew or should have known she was engaged in criminal conduct and that her statements could be used in court against her penal interest. Her statements were in furtherance of the crime of delivery of a controlled substance and were relevant to prove a delivery was about to be made and by whom. She was satisfied she was dealing with a bona fide purchaser, so there was no apparent motive for her to lie. The statements were made spontaneously in order to complete a transaction in which she had a vested interest and into which she had voluntarily entered. Furthermore, Barrey's statements in Gee's presence were consistent with those made outside his presence, and the statements were consistent with Gee's behavior.

Gee cites *United States v. Benveniste,* 564 F.2d 335 (9th Cir. 1977) as support for his argument that the State should not have it both ways in excluding exculpatory statements and including inculpatory statements. In *United States v. Benveniste, supra,* the defendant, who had been charged with possession and intent to distribute cocaine, asserted the defense of entrapment or lack of predisposition. The Court of Appeals reversed appellant's conviction, holding that the court erred in allowing the government to present hearsay statements, through the testimony of the informant, incriminating the defendant, while excluding the defendant's investigator from testifying as to statements made by the same individual to the investigator that exculpated the defendant.

*Benveniste* may be distinguished from the present case. First, in *Benveniste* there was significant external evidence to corroborate the appellant's version of the transaction, while in the present case, no such corroborating evidence exists other than Gee's own testimony. Second, in *Benveniste,* the court found that the exculpatory statements were admissible as against the declarant's penal interest, while in the present case the allegedly exculpatory statements made

by Barrey in the presence of Joslin were not against her penal interest. Also in *Benveniste,* exclusion of the exculpatory statements resulted in the defendant's case being "'far less persuasive than it might have been'". *United States v. Benveniste, supra* at 342. On the other hand, in the present case, Barrey's statements were very vague and Joslin's memory unclear. Therefore, exclusion of the statements did not make Gee's case "'far less persuasive than it might have been'". *Benveniste,* at 342.

Similarly, Gee relies on *United States v. Brainard,* 690 F.2d 1117 (4th Cir. 1982), which held that testimony by a witness that a third party made statements exculpating the defendants was admissible, because the third party was unavailable and the statements were against his penal interest. Again, the present case may be distinguished on the basis that Barrey's statements were not against her penal interest, nor were they surrounded by corroborating circumstances.

Accordingly, we find that the trial court properly exercised its discretion in admitting evidence of Barrey's statements to Vance and in excluding evidence of Barrey's statements made in the presence of Joslin.

### PREPROSECUTORIAL DELAY

Gee finally argues that the trial court should have dismissed the case because the detective delayed in referring the case to the prosecutor to protect the identity of the informant. Gee claims that the preprosecution delay was in violation of due process because the informant had nothing to do with the case against Gee and because Gee was prejudiced by the delay during which time a crucial witness, Barrey, left the state.

Delay between an alleged criminal occurrence and the filing of charges does not violate a defendant's right to a speedy trial. *State v. Platz,* 33 Wn. App. 345, 347, 655 P.2d 710 (1982). Rather, preaccusatorial delay in bringing charges may violate due process. *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). To

establish that such delay violates due process, the defendant must first show that the delay caused prejudice. *State v. Calderon,* 102 Wn.2d 348, 352, 684 P.2d 1293 (1984). However, a mere allegation that witnesses are unavailable or the memories have dimmed is insufficient. The defendant "must specifically demonstrate the delay caused actual prejudice to his defense." *State v. Bernson,* 40 Wn. App. 729, 729, 734, 700 P.2d 758, *review denied,* 104 Wn.2d 1016 (1985). Once a defendant has established "the minimal prerequisite of prejudice", *State v. Calderon, supra* at 353, the court must also consider the State's reasons for the delay to find a due process violation. The State must show that the delay was neither intentional nor negligent. If the State is able to justify the delay, the court must then balance the State's interest against the prejudice to the accused in determining whether a due process violation has occurred. *State v. Calderon, supra* at 353 (citing *United States v. Lovasco, supra*). Ultimately, the test suggested by the United States Supreme Court is "whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions". *United States v. Lovasco, supra* at 790.

In the present case, the only prejudice identified by Gee was Barrey's absence at the trial. Gee contends that because the police knew that Barrey was leaving for Florida, his case should have been referred for prosecution earlier in order to allow him to call Barrey as a witness. Gee's allegation of prejudice is too speculative. First, Vance's testimony at trial does not support Gee's contention that Barrey would have corroborated Gee's version of the events. Second, it is likely that Barrey would have invoked her privilege against self-incrimination. Third, because the evidence indicated that Barrey intended to depart for Florida shortly after the transaction on September 13, it is highly unlikely that she would have been available even if Gee's case had been filed promptly. *See State v. Madera,* 24 Wn. App. 354, 356, 600 P.2d 1303 (1979) (no showing that witness's unavailability was attributable to 6-month prefiling

delay). Moreover, even if there was some prejudice, the State's interest in protecting the identity of the informant outweighs such prejudice. Although the informant gave no specific information regarding Gee, Detective Vance had a reasonable basis for being concerned that the filing of charges would lead to the identification of the informant by either Barrey or Gee. Furthermore, the informant was assisting other undercover police investigations, and the police had a legitimate interest in concealing the informant's identity in order to effectively pursue such investigations. Accordingly, we find that the trial court did not abuse its discretion in ruling that the need to protect the informant was a sufficient justification for the delay.

Gee's conviction is therefore affirmed.

COLEMAN and WINSOR, JJ., concur.

Review denied by Supreme Court January 10, 1989.