[No. 18994-5-III. Division Three. May 22, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH BERNARD JORDAN, *Appellant*.

292

*Joseph Bernard Jordan*, pro se.
*Janet G. Gemberling*, for appellant.
*John D. Knodell, Prosecuting Attorney*, for respondent.

SCHULTHEIS, J. — Joseph Jordan asks this court to reverse his conviction for kidnapping and felony murder and remand for a new trial. Through appellate counsel and in his pro se brief he first contends that prosecutorial misconduct caused reversible error. Additionally, he claims the trial court abused its discretion when it excluded exculpatory evidence from trial. Finally, he maintains the evidence does not

support the jury's verdict. Because the trial court abused its discretion when it excluded exculpatory hearsay testimony from evidence, we reverse and remand for a new trial.

## FACTS

In the late afternoon of January 5, 1999, officers of the Moses Lake Police Department discovered the partially submerged body of Eric Brace, lying face down on the shore of Moses Lake. Mr. Brace's hands, legs, face, and head were bound with duct tape. An autopsy took place the next day, which revealed that Mr. Brace had died as the result of blunt force trauma to the back of the head.

On January 7, a Spokane County sheriff's deputy found the victim's car abandoned by the side of the road in a deserted area of northwest Spokane. An unsuccessful attempt had been made to set the car on fire. A fingerprint expert identified a single print lifted from the trunk of the car as belonging to Mr. Jordan. A manila envelope addressed to Mr. Jordan was found in the back window of the abandoned car.

That same day, Sergeant Jim Jenkins of the Moses Lake Police Department interviewed and recorded a statement from Anecia O'Toole, who revealed correct facts surrounding the location and manner of Mr. Brace's death, which had not been disclosed to the media. Ms. O'Toole indicated that "Joe" had contacted her at her residence on January 4 at about 8:00 p.m. Joe told her that he had witnessed the murder of a man named Eric whose body was then thrown into Moses Lake. Ms. O'Toole was able to identify Joe from a photomontage as Joseph Bernard Jordan.

Police officers contacted Mr. Jordan on January 8, 1999, regarding Mr. Brace's suspicious death. Mr. Jordan admitted that he was with Mr. Brace, two other men, and two females on Sunday night, January 3, and Monday morning, January 4, but denied going to Moses Lake. Mr. Jordan told the officers that he had no personal knowledge about Mr. Brace's death.

As a result of the homicide investigation, an order determining the existence of probable cause was filed in Grant County Superior Court. Mr. Jordan was arrested after a warrant issued. His bail was set at $1 million. Mr. Jordan was charged by amended information with alternative counts of murder in the first degree (RCW 9A.32.030(1)(a) or (c)); and first degree kidnapping (RCW 9A.40.020(1)(c) and/or (d)); or, in the alternative, second degree kidnapping (RCW 9A.40.030(1)).

At the end of a jury trial, Mr. Jordan was found guilty of first degree murder (count 2) and first degree kidnapping (count 3). He filed a motion for relief from judgment or, in the alternative, a new trial based on newly discovered evidence. Although not contained in the record, the motion was apparently denied and Mr. Jordan was sentenced within the standard range. He filed a timely notice of appeal.

## DISCUSSION

Mr. Jordan first contends that the prosecutor improperly commented on his Sixth Amendment right to confront witnesses at trial. Although no objection was raised at trial, Mr. Jordan urges this court to consider the error as one of constitutional magnitude, which affected his right to a fair trial.

■ ■ A defendant alleging prosecutorial misconduct bears the burden of showing both improper conduct and prejudicial effect. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). To establish prejudice, Mr. Jordan must show a substantial likelihood that the prosecutor's misconduct affected the jury's verdict. *Id.* Failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury. *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

Mr. Jordan asks us to review the error under the stan-

dard set forth in *State v. Jones*, 71 Wn. App. 798, 811-12, 863 P.2d 85 (1993). In that case, the court reviewed an allegation of prosecutorial misconduct as a manifest error without examining whether a curative instruction would have alleviated the potential prejudice of the remark. However, the proper standard to be utilized is the test set forth in *Belgarde*. This rule of law was reiterated in *State v. Klok*, 99 Wn. App. 81, 84, 992 P.2d 1039, *review denied*, 141 Wn.2d 1005 (2000). The *Klok* court confirmed that in determining whether alleged prosecutorial misconduct is reviewable without an objection, "the Washington State Supreme Court has unswervingly adhered to the standard articulated in *Belgarde*." *Id.*

Mr. Jordan claims the prosecutor repeatedly commented on his right to be present in the courtroom pursuant to the confrontation clause. As an example, he sets forth the following portion of witness Terrence Cole's cross-examination testimony:

Q. Would it be accurate to say when you gave the statements on the 20th of January and March second these events were a lot fresher in your mind, weren't they?

A. I guess you could say that, sir.

Q. And Mr. Jordan wasn't present when you gave these statements, looking at you while you spoke, was he?

A. No, sir.

Report of Proceedings (RP) at 486. Mr. Jordan also maintains that the prosecutor made the same error in his rebuttal statement at closing when the prosecutor said to the jury:

Now again, when you're talking about Mr. Cole, I think you have to differentiate between Mr. Cole, who's sitting here in the witness stand with the defendant looking at him here and worried about getting what they call the snitch jacket in prison, and Mr. Cole who's approached by the officers way back in January of this year and later in March.

RP at 615-16. Mr. Jordan contends these remarks are evidence of the prosecutor deliberately and flagrantly elic-

iting statements from Mr. Cole that were designed to support an argument that Mr. Cole's conflicting testimony was influenced by Mr. Jordan's presence in the courtroom. Mr. Jordan believes that by using this tactic the State unfairly emphasized the evidence against him, which deprived Mr. Jordan of a fair trial. We disagree.

 In this case, Mr. Cole was utilized both as a State's witness and as a defense witness. In his testimony for the defense, Mr. Cole omitted significant details that he had told the police in their initial interviews with him. In questioning Mr. Cole about the inconsistencies, the State asked the questions set forth above. Taken in context, it appears the questions were asked in an attempt to inform the jury that there were plausible reasons why Mr. Cole would testify differently at different times and under different circumstances. The questions were asked in order to allow the jury to make a credibility determination regarding Mr. Cole. There is nothing in the record that would suggest the questions were asked in order to infer that Mr. Jordan was trying to influence Mr. Cole's testimony. The prosecutor has wide latitude in closing arguments to draw reasonable inferences from the evidence. *State v. Gentry*, 125 Wn.2d 570, 641, 888 P.2d 1105 (1995). Although the State repeated the possible reason for Mr. Cole's inconsistent testimony in its closing remarks, we find no evidence that the State was flagrantly and with ill intent trying to comment on Mr. Jordan's right to confront witnesses against him.

Mr. Jordan did not object to the remarks to which he assigns error on appeal. Because he failed to do so, he waives each allegation of error because we do not view the prosecutor's remarks to be so flagrant and ill intentioned as to be comparable to the kind of remarks that our Supreme Court has held to be reviewable. *Belgarde*, 110 Wn.2d at 508 (holding review not precluded when prosecutor stated that defendant belonged to a group of butchers and madmen who killed indiscriminately); *State v. Reed*, 102 Wn.2d 140, 145-46, 684 P.2d 699 (1984) (prosecutor repeatedly

called the defendant a liar and clearly a "murder two"). Curative instructions, had Mr. Jordan requested them, could have neutralized any prejudice. Accordingly, this contention is without merit.

Next it is claimed that the prosecutor, in his closing remarks, improperly made known to the jury his personal opinion that Mr. Jordan was not a truthful person. Again, as in the above analysis, defense counsel failed to object to the State's closing remarks.

The statement to which Mr. Jordan objects occurred in the prosecutor's rebuttal remarks during closing. The prosecutor told the jury:

> Counsel says there's no testimonial evidence of what happened. Well, again, I don't in any way want to diminish my responsibility on behalf of the State of Washington to prove these charges against the defendant beyond a reasonable doubt. You know, if you don't think, if you don't think I've proved this case beyond a reasonable doubt, I don't want you to convict the defendant. I don't want you to think for a minute I'm trying to back away from that.
>
> But really, what is the reasonable explanation? What reasonable explanation can there be for the defendant simply going along? *And what is the reasonable explanation for the defendant, I think, deliberately misstating to the police what he knows about this crime,* particularly if he's not afraid that talking to the police is going to get him in trouble with the law?

RP at 618 (emphasis added). Mr. Jordan assigns error to this statement, citing case law that holds it is impermissible for a prosecutor to state, as his personal belief, that the defendant has lied. *State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996); *State v. Stith*, 71 Wn. App. 14, 19, 856 P.2d 415 (1993); *State v. Stover*, 67 Wn. App. 228, 231, 834 P.2d 671 (1992).

██ Looking at the prosecutor's remarks in context, we find no evidence of a flagrant intent to impose the prosecutor's own impression regarding Mr. Jordan's truthfulness on the jurors. Mr. Jordan took the stand in his own defense at trial. He admitted that he lied to the police and a

newspaper reporter about his presence at the crime scene. He also admitted he tried to avoid talking with the officers investigating the homicide. As such, the prosecutor's remarks were not a comment on his own personal beliefs but a recap of the evidence that had already been presented by Mr. Jordan.

Again, applying the *Belgarde* test set forth above, we do not find that the prosecutor's closing remarks unduly prejudiced the defendant. A statement from *Klok* is applicable here:

> One of the reasons for placing the burden on the defense to object in the course of argument is that the defendant and defense counsel are the persons most acutely attuned to perceive the possible prejudice of the prosecutor's remarks. The absence of an objection in this case indicates that the comment, at the time it was made, did not strike Klok or his attorney as being unfair or untrue.

*Klok*, 99 Wn. App. at 85. A curative instruction, had it been requested, would have taken any perceived sting out of the prosecutor's rebuttal statement.

Finally, Mr. Jordan claims the trial court erred when it excluded a hearsay statement from defense witness Jason Wagner's testimony. As a defense strategy, Mr. Jordan sought to introduce evidence through Mr. Wagner that Margarito Ramirez had admitted kidnapping and killing the victim. The court would not allow into evidence Mr. Ramirez's hearsay statement because it determined the statement did not meet the criteria of a valid exception to the hearsay rule.

We review a trial court's decision regarding the admissibility of testimony pursuant to ER 804(b)(3) for abuse of discretion. *State v. Roberts*, 142 Wn.2d 471, 496, 14 P.3d 713 (2000). ER 804 provides:

> **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) *Statement Against Interest.* A statement which was at the

time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

To invoke this exception, three requirements must be met. First, the declarant must be unavailable to testify. Next, the declarant's statement must tend to subject him to criminal liability. Finally, the statement must be trustworthy. *State v. Valladares*, 99 Wn.2d 663, 668, 664 P.2d 508 (1983).

█ The parties do not dispute that Mr. Ramirez was unavailable to testify because to do so he would have had to revoke his privilege against self-incrimination. A witness who refuses to testify on this basis is deemed unavailable. *Roberts*, 142 Wn.2d at 491. Regarding the second prong, Mr. Wagner would have testified that Mr. Ramirez admitted to participating in the murder and kidnapping of Mr. Brace. Mr. Jordan claims this statement certainly would subject Mr. Ramirez to criminal liability. In fact, Mr. Ramirez was convicted on similar charges prior to Mr. Jordan's trial. The trial court, however, found that "a braggadocios statement by a gang member to another member of his gang that 'oh yeah, I off'd this man down in Moses Lake' does not, in the court's view, in a real and tangible way subject Mr. Ramirez to any threat of criminal prosecution." RP at 462. This statement is contrary to law and is an abuse of the court's discretion.

█ █ In *Roberts*, defense counsel made a pretrial motion to admit the ER 804(b)(3) statement of another defendant, Timothy Cronin, which tended to show that Mr. Roberts was the ringleader in criminal action in which Mr. Cronin participated. That criminal activity resulted in a murder. The trial court denied the motion, finding that Mr. Cronin's statement to police regarding his and Mr. Rob-

erts's actions was not trustworthy and was not a statement against Mr. Cronin's interests. The defense motion was renewed, and again denied, during trial. *Roberts*, 142 Wn.2d at 483. Our Supreme Court reversed the trial court's decision. In response to the State's confrontation clause challenge the *Roberts* court determined: "Here, because Roberts offered [Mr. Cronin's] statements, no confrontation clause issues exist. Because the offered portions were against Cronin's interest and offered by the defense, the presumption is admissibility and not exclusion." *Id*. at 497. Since the same circumstances exist in the case at bar, the *Roberts* holding is applicable.

During Mr. Jordan's trial, in response to his offer of proof that Mr. Ramirez's hearsay statement should be admitted at trial through a defense witness's testimony, the court looked at the reliability factors cited in *State v. Gee*, 52 Wn. App. 357, 760 P.2d 361 (1988).[1] It determined that the factors were "fairly evenly balanced" in favor of the statement's trustworthiness. RP at 461. This decision, when combined with the "presumption of reliability" test from *Roberts*, leads us to conclude that the trial court abused its discretion when it did not allow Mr. Ramirez's hearsay statement into evidence at trial. Accordingly, we must reverse the decision and remand for a new trial on this

---

[1] The following factors are to be considered in determining the reliability or trustworthiness of out-of-court declarations: (1) whether the declarant had an apparent motive to lie; (2) whether the general character of the declarant suggests trustworthiness; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) whether the timing of the statements and the relationship between the declarant and the witness suggest trustworthiness. Factors to be considered in conjunction with those above are: (1) whether the statements contained express assertions of past fact; (2) whether cross examination could not help to show the declarant's lack of knowledge; (3) whether the possibility of the declarant's recollection being faulty is remote; and (4) whether the circumstances surrounding the statements give no reason to suppose that the declarant misrepresented the defendant's involvement.

*Gee*, 52 Wn. App. at 362-63 (citation omitted). These factors were also analyzed by the *Roberts* court. *Roberts*, 142 Wn.2d at 497-98.

issue. As such, we need not reach the merits of Mr. Jordan's claim that the evidence did not support the verdict.

Reversed and remanded.

KURTZ, C.J., concurs.

BROWN, J. (concurring) — *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000), a case undecided when the trial court ruled, casts decision making in ER 804(b)(3) situations, like here, in a light favoring a defendant's right to present a defense. *Roberts* creates a presumption of reliability because confrontation is not an issue when a codefendant's incriminating statements are offered by the defense. I write to emphasize that when the *Gee* factors are evenly balanced, as here, the presumption of reliability logically controls. *State v. Gee*, 52 Wn. App. 357, 760 P.2d 361 (1988). When the factors are not evenly balanced on the side of exclusion, then trial judges must indicate the balancing weighs heavily for exclusion.

In fairness to the trial court, and with compassion for all facing the rigors of retrial, *Roberts* was not before the trial court. Now, more than an evidence issue is involved. A court must consider a defendant's constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992), *cert. denied*, 508 U.S. 953 (1993). *Roberts* creates a legal presumption of admissibility. *Roberts*, 142 Wn.2d at 497. For trial courts, after the *Gee* weighing process, the probative value of evidence must still be balanced against the unfair prejudicial effect under ER 403, and then the next step is to consider the defendant's right to present a defense in light of the presumption of admissibility.

Review denied at 145 Wn.2d 1013 (2001).