51 P.3d 179 (2002)
112 Wash.App. 828
STATE of Washington, Respondent,
v.
David ANDERSON, Appellant.
No. 45855-8-I.
Court of Appeals of Washington, Division 1.
August 5, 2002.
*180 Thomas Michael Kummerow, Seattle, for Appellant.
David M. Seaver, Cynthia S.C. Gannett, Lee Davis Yates, King County Pros. Atty., Seattle, for Respondent.

PUBLISHED IN PART
COX, J.
David Anderson appeals on multiple grounds his conviction on four counts of first *181 degree aggravated murder. Although the trial court treated an accomplice's entire confession as his "statement" for purposes of its analysis under ER 804(b)(3), and that approach is inconsistent with State v. Roberts,[1] that approach was harmless error. The court properly exercised its discretion in excluding the 20 proffered excerpts from the confession because they were untrustworthy. The trial court also properly exercised its discretion by denying Anderson's motion to change venue. The trial court's remedies for the State's alleged failure to provide adequate discovery regarding three witnesses were adequate and did not deprive Anderson of his right to a fair trial. And alleged prosecutorial misconduct did not deprive Anderson of a fair trial. Finally, the trial court properly admitted evidence of Anderson's possession of knives. We affirm.
In January 1997, the State charged both Anderson and his close friend, Alex Baranyi, with four counts of first degree aggravated murder for killing the members of the Wilson family. The State's theory was that Anderson and Baranyi were both involved in the strangulation death of Kim Wilson in a park near her home in Bellevue. The State also theorized that both defendants then proceeded to Ms. Wilson's home and murdered her sister and parents to avoid suspicion of involvement in the murder in the park.
Two days after the murders, Baranyi provided a tape recorded confession to police in which he admitted to killing the Wilsons. The transcript of the confession is 61 pages long and contains additional information that we shall discuss later in this opinion. The State charged both Anderson and Baranyi, but the trial court later severed the cases for trial, ruling that Baranyi could raise a diminished capacity defense. A jury convicted Baranyi as charged and we affirmed in an unpublished opinion.[2]
Anderson's separate first trial followed, ending in a mistrial because the jury was unable to reach unanimous verdicts on the four counts. In the fall of 1999, Anderson faced his second trial on the same four counts. The jury convicted him as charged.
The trial court sentenced him to four consecutive terms of life imprisonment without the possibility of parole.
Anderson appeals.

Statements Against Penal Interest
Citing Roberts, Anderson argues that the trial court abused its discretion by excluding certain self-inculpatory excerpts from Baranyi's taped interview with police two days after the murders. While the trial court's method of analysis was inconsistent with the rule later laid down by Roberts, that error was harmless. We hold that the exclusion of the evidence as untrustworthy was proper.
Two days after the four murders, Alex Baranyi gave a lengthy tape-recorded confession. Before his first trial, Anderson moved to admit twenty numbered excerpts from the 61 pages of the transcript of the confession. They were:
1. I remember realizing I was strangling her.
2. I just, I realized I, she was on the ground and I was strangling her.
3. When I, when I realized I was strangling her, I, I remember seeing her face turn blue and I just, I couldn't stop. I don't know why. I just, I felt angry, but I don't know why.
4. I, I didn't know if she was dead or not and I didn't, didn't want her, her coming, coming out of unconsciousness and running to the police. I tied it real tight around her neck.
5. I, I thought that maybe, since she was at home, that her, her parents might know who she was out with, so I took her car, drove it to her house. No. I took her car and I sat in it for a while and I drove over to her house and sat in it. `Cause it, it was probablyIt, it must have been, it must have been a couple of hours between going into the house and leaving Kim. At least an hour.
*182 6. I went through the front door.
7. And I walked into the bedroom. The, the dog started barking. I hit the woman on the right side of the bed with the baseball bat.
8. I hit the woman with the baseball bat several times.
9. On the head.
10. The man got up.
11. On left side of the bed. I'm sorry. The left side of the bed. He got up. He, he started yelling like, "What's going on?" And dropped the bat and went over to him. I took out my knife and I stabbed him several times.
12. I stumbled backwards and I went and I got the bat. And when I turned around, he had gone halfway down the bed, down to the foot of the bed and he, he was kneeling down. And I went up to him and I, I just kept hitting him with the bat `til he fell to the floor.
13. I walked out of the room. The hallway light turned on. Julia came out of her room at the end of the hall.
14. And pulled the knife out of my pocket, kneeled down, and started stabbing at her.
15. In the upper chest, neck. She had her arms over her face, was fending me off.
16. I dropped the knife. I picked up the bat and I started hitting her with it. And she grabbedOr I stopped hitting her for a second'cause I was getting tired. And she grabbed the piece of closet organizer, I guess, and held it over her. She was still alive. And I picked up the bat and I started hitting that, trying to get it away from her, and just grabbed it and pulled it away from her and started hitting her in the face with it `til she stopped moving.
17. I dropped the bat and I picked up the knife. And I went back in the parents' room and turned the light on, saw the guy laying there. And the woman was still in the bed. Blood was all over her and she was gurgling. I thought she was still alive. I didn't, didn't want her to suffer so I stabbed her several times in the face and neck and in the head, `cause her head was sideways, I think.
18. I, I took the CD changer, the VCR, and the phone into the, out, out into the driveway. I put them in the passenger seat of the car I had driven over there.
19. And I guess I went home. I had, I had the, the bat with me and the knife was still in my pocket. I went home. I put the, I, I, I put the electronic devices in the back room and covered `em up with a coat.
20. But I, I changed and I wrapped up everythingthe coat. I got back in the car and left. And I don't know where I went. I, I remember parking the car, taking the keys. I think I threw the keys somewhere.
The first four of the above excerpts relate to the murder of Kim Wilson at the park. The remaining sixteen relate to the murders at the Wilson home.
Prior to the motion to sever for trial, Anderson argued that the excerpts were admissible under ER 801(d)(2) as admissions of a party opponent. He also maintained that Baranyi's remarks were admissible as statements against interest under ER 804(b)(3).
The original trial judge ruled that Anderson could introduce Baranyi's entire confession as an admission of a party opponent under ER 801(d)(2), but denied the request to admit only the excerpts. The court also concluded that the entire confession would be admitted under ER 106.[3] At his first trial following severance, Anderson chose not to introduce Baranyi's confession. That trial resulted in a hung jury.
*183 Prior to his second trial before a different judge, Anderson moved for reconsideration of the prior ruling regarding the admissibility of excerpts from Baranyi's confession. Citing Williamson v. U.S.,[4] Anderson again argued that the twenty excerpts were admissible under ER 804(b)(3) and that the court should admit them without also admitting the rest of the confession. The judge rejected the Williamson approach, and concluded that Baranyi's entire confession "contain[ed] insufficient corroborating circumstances to indicate its trustworthiness," and was therefore inadmissible. This time, a jury convicted Anderson on all four counts.
Following entry of the judgment and sentence in this case, our Supreme Court adopted the Williamson approach in State v. Roberts. The effect of Roberts on the exclusion of the twenty excerpts that Anderson sought to admit is now before us.
Under ER 804(b)(3), a hearsay statement against the declarant's penal interest may be admissible if the declarant is unavailable and the statement:

...
was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.[[5]]
For this criminal case, a hearsay statement against penal interest is admissible if "(1) the declarant is unavailable to testify, (2) the statement[] so far tend[s] to expose the declarant to criminal liability that a reasonable person in the same position would not have made the statement unless convinced of its truth, and (3) corroborating circumstances clearly indicate the statement's trustworthiness."[6] We review the trial court's decision regarding the admissibility of testimony under ER 804(b)(3) for abuse of discretion.[7]
The parties do not dispute that Baranyi was unavailable to testify under the first prong of this test. We accordingly focus our discussion on the second and third prongs of the test. Specifically, we must decide what constitutes Baranyi's "statement" for purposes of the rule, and whether corroborating circumstances clearly indicate the statement's trustworthiness.
Relying on Roberts, Anderson argues that the trial court erred by considering Baranyi's entire confession as his "statement" and refusing to admit each of the twenty excerpts as "statements against interest" under ER 804(b)(3). The State does not contest this characterization of what the trial court did. And a fair reading of the record confirms that the characterization is correct.
In Roberts, decided after the ruling at issue here, our Supreme Court reversed Roberts' death penalty conviction based on the erroneous exclusion of self-inculpatory portions of a co-defendant's confession.[8] Co-defendant Cronin had made a tape recorded confession to police in which he initially denied murdering the victim. He claimed that Roberts alone had committed the murder.
*184 Later in the taped confession, Cronin admitted participation in some of the actions that may have led to the victim's death. But Cronin continued to deny killing the victim.[9]
The trial court denied Roberts' pretrial motion to admit excerpts of Cronin's tape recorded confession.[10] The court ruled that the confession "was untrustworthy hearsay and not a statement against interest."[11] Roberts argued "that Cronin's extensive confession may be redacted so that only those portions actually against Cronin's interest would constitute his `statement.'"[12] In response, the State argued that Cronin's entire confession was his "statement," and had to be excluded in its entirety.[13]
Our Supreme Court rejected the State's "whole statement" approach, and instead followed the United States Supreme Court's decision in Williamson v. U.S. There, the Supreme Court held that federal Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." Under Williamson, federal courts must "examine a proffered hearsay narrative, separate the inculpatory portions from those that are self-serving, and redact the narrative to exclude the self-serving statements."[14]
Adopting Williamson, the Roberts court accordingly held that the trial judge erred in failing to consider self-inculpatory excerpts of Cronin's confession as separate `statements' for the purposes of the statement against interest exception to the hearsay rule.[15] The court also held that "the trial judge erred in concluding Cronin's confession was unreliable, especially in light of its admission at Cronin's separate trial."[16] On these bases, it reversed Roberts' conviction and death sentence.
Here, the trial court followed the same procedure that the Roberts court later rejected. In its oral ruling, the court stated, in part:
So for all those reasons, looking at the statement itself in its entirety, which I know [defense counsel] takes issue with, but I do believe that's appropriate. Looking at the statement, its own internal inconsistencies... give rise to questions as to its reliability throughout.

...
Let me go further and add that Baranyi's statement has to be reviewed in its entirety to determine whether the circumstances provide the considerable assurance of reliability that I have alluded to, and a fair reading I think of the 62-page transcript leads to the conclusion that he lacks sufficient reliability to be admissible in those statements.[[17]]
The court's written findings and conclusions are consistent with this "whole statement" approach.
Nevertheless, the "whole statement" approach used here and later rejected in Roberts, was harmless. The parties dispute what harmless error standard applies. Anderson argues that the constitutional standard of review applies because the exclusion of Baranyi's self-inculpatory statements effectively deprived him of his constitutional right to present a defense.[18] Under that standard, an error of constitutional magnitude is harmless only if the State can prove beyond a reasonable doubt that the jury *185 would have reached the same result in the absence of the error.[19]
But the exclusion of the excerpts did not prevent Anderson from arguing his theory of the case, which was that Baranyi alone had committed all four murders. The State never denied or minimized Baranyi's role in those murders, and the jury was fully aware that Baranyi had been convicted of four counts of aggravated murder. In short, the court's use of the "whole statement approach" did not abridge Anderson's right to present a defense. Thus, it did not rise to the constitutional level. Accordingly, we apply the non-constitutional harmless error standard. Under this standard, an error in the admission of evidence is "not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[20]
Applying this latter standard, we hold that Anderson has not shown that, within reasonable probabilities, the outcome of the trial would have been materially affected had the court admitted Baranyi's 20 self-inculpatory statements. The jury was well aware that Baranyi had been convicted of the murders. Therefore, the excerpts of Baranyi's confession in which he describes his participation in the murders were cumulative. Their admission would not have changed the outcome at Anderson's trial.
The excerpts were also unreliable under the nine indicia of reliability set forth in State v. Whelchel and State v. McDonald. The Roberts court specifically noted that not all statements against penal interest would be admissible under the Williamson approach. It recognized that such statements must still satisfy the reliability prong of ER 804(b)(3) to be admissible.[21] Under that prong, it is within the trial court's discretion "to exclude redacted statements that are, nonetheless, unreliable."[22]Roberts reaffirmed that courts should look to the following criteria when evaluating the reliability of such statements:
(1) Was there an apparent motive for [the] declarant to lie?
(2) What was the declarant's general character?
(3) Did more than one witness hear [the] declarant's statement?
(4) Was the statement made spontaneously?
(5) Did the timing of the statement[] and the relationship between [the] declarant and [the] witness suggest trustworthiness?
(6) Does the statement contain an express assertion of past facts?
(7) Did the declarant have personal knowledge of the identity and role of the crime's other participants?
(8) Was the declarant's statement based upon faulty recollection?
(9) Was the statement made under circumstances that provide reason to believe the declarant misrepresented [the] defendant's involvement in the crime?[[23]]
We note that the Roberts court also stated that a presumption of admissibility exists where the defense offers the declarant's incriminating statements.[24] It cited Chambers v. Mississippi[25] and State v. Anderson,[26] to *186 support that proposition. We have examined those cases and find no apparent support for the proposition, and none that such a presumption would exist here. Moreover, such a presumption is not among the nine Whelchel/McDonald factors pertaining to reliability that the Roberts court expressly reiterated. For these reasons, we do not apply any presumption of admissibility here. Instead, we rely only on the nine factors expressly reiterated and applied in Roberts to evaluate the admissibility of the twenty excerpts.
With respect to the first factor, motive to lie, Baranyi's close relationship with Anderson gave him a strong motive to lie to protect his friend from being implicated in the murders. Portions of Baranyi's confession strongly evidence such motive. Thus, unlike Roberts, in which our Supreme Court concluded that Cronin had no motive to implicate only himself, Baranyi clearly had a motive to implicate himself in the murders.
The second factor is whether Baranyi's general character suggests trustworthiness. The fact that he admitted during the second half of his taped confession that he lied in portions of the first half of his confession, shows a lack of trustworthiness. Moreover, Baranyi's admitted involvement in the murders and the nature of the crimes charged indicate that he was not trustworthy.[27]
Because Baranyi's statements were taped, the third factor, which is whether more than one person had heard them, is irrelevant.[28]
Regarding the fourth factor, Baranyi's remarks lacked spontaneity because he made them during custodial interrogation by the police and after his arrest for the murders.
As to the fifth factor, the timing of his statements did not suggest trustworthiness. He was in police custody at the time he made the statements. Statements to the police in an adversarial situation typically do not have the trustworthiness associated with remarks made to friends.[29]
As to the sixth factor, Baranyi's statement contained express assertions of past facts. With respect to the seventh factor, Baranyi had personal knowledge of the identity and role of the crime's other participants. As for the eighth factor, there is no indication that Baranyi's recollection was faulty, particularly in light of the fact that he made these statements just two days after the murders.
Finally, Baranyi's extremely close friendship with Anderson suggests that Baranyi misrepresented Anderson's involvement in the crimes in an attempt to keep police suspicion away from his friend Anderson. As we observed in addressing factor one, portions of Baranyi's confession support this view.
In sum, five of the nine factors weigh against admissibility. Three weigh in favor of admissibility. One is irrelevant. Thus, on balance, the nine indicia of reliability when applied to each of the twenty excerpts weigh against admissibility. Corroborating circumstances do not clearly indicate the trustworthiness of Baranyi's statements.
Anderson does not explain how the court's ruling excluding the evidence might have differed had it considered excerpts from Baranyi's confession as the statements. Anderson instead argues that the court erred in excluding the statements in light of the admission of the entire confession at Baranyi's trial. Given our holding, we see no difference in the outcome. Because independent evaluation of the twenty excerpts from the confession under the Whelchel/McDonald test leads to the same result, any error in the court's use of the "whole statement" approach was harmless.
Moreover, had the court admitted Baranyi's self-inculpatory statements under ER 804(3)(b), the State would then have successfully moved to admit the entire statement under ER 106, the rule of completeness.[30] *187 The record is clear that the trial judge would have granted such a motion. The jury would then have heard not just Baranyi's self-incriminating remarks, but also those portions of his statement in which he described acting with an accomplice. Particularly in light of the fact that the jury would have been entitled to hear Baranyi's entire confession, Anderson has not shown that admission of certain self-inculpatory portions would have likely affected the jury's verdict. Any error in excluding them was thus harmless.
Anderson nevertheless argues that the trial court abused its discretion by concluding that Baranyi's confession was unreliable because the confession had been admitted at Baranyi's separate trial. In Roberts, the court concluded that the co-defendant's confession was reliable in large part because the State had introduced that confession during the co-defendant's trial.[31] But the State took the opposite position at Roberts' trial, and argued that the court should exclude the entire confession as unreliable.[32] Anderson maintains that the State has taken a similarly inconsistent position here.
In Roberts, the State opposed the admission of Cronin's entire confession. The court held that "the trial judge erred in concluding Cronin's confession was unreliable, especially in light of its admission at Cronin's separate trial." The court noted that the State had been "the strongest proponent" of the confession's reliability at the co-defendant's trial. But it had then taken an inconsistent position at Roberts' trial, arguing that the court should exclude the entire confession as unreliable.[33]
Here, in contrast, the State's position at Anderson's trial was consistent with its position at Baranyi's trial. The State introduced Baranyi's entire confession at his separate trial, and did not oppose the admission of the confession in its entirety at Anderson's trial. It sought only to exclude the redacted version offered by the defense. Accordingly, the State's position in both trials was consistent. Thus, the portion of Roberts that relies on alleged inconsistent positions of the State has no application here.
In sum, the trial court incorrectly failed to consider excerpts of Baranyi's confession as separate `statements' for the purposes of its analysis under ER 804(b)(3). But analysis of the nine indicia of reliability applied to those separate statements supports our conclusion that the evidence was not trustworthy and was properly excluded.
We affirm the judgment and sentence.
The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.[34]
ELLINGTON, J., concurs.
BECKER, C.J., concurs separately.
BECKER, C.J. (concurring).
I concur with the result reached by the majority, and indeed endorse almost every component of the majority's analysis. I do not, however, agree that the trial court used the erroneous "whole statement" approach to arrive at the decision to exclude those portions of Alex Baranyi's confession that suggested he was the sole murderer. Rather, the court considered the whole statement as context for the ultimate determination that the portions offered by Anderson were unreliable. The court then exercised its discretion to exclude the unreliable excerpts.
Examining the proffered excerpts in the context of the whole statement, and rejecting them if they are unreliable, was entirely appropriate under the cases cited by the majority. In this case, whether or not to admit the excerpts standing alone was not a close call. Later in the same confession, Baranyi admitted he had lied about acting alone because he was protecting his accomplice. It would have been patently unfair and an abuse of *188 discretion to admit only the self-inculpatory excerpts because, standing alone, they were patently unreliable. I would hold that the trial court did not commit error; and for that reason no harmless error analysis is necessary.
NOTES
[1] 142 Wash.2d 471, 14 P.3d 713 (2000).
[2] See State v. Baranyi, 101 Wash.App. 1054 (2000), review denied, 143 Wash.2d 1003, 20 P.3d 944 (2001).
[3] ER 106 provides that:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.
[4] 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (concluding that the term "statement" in Federal Rule of Evidence 804(b)(3) means "a single declaration or remark ..." and that the trial court thus erred in admitting co-defendant's entire hearsay statement because it thereby admitted statements that were not against the declarant's interest).
[5] ER 804(b)(3) (italics ours).
[6] State v. Whelchel, 115 Wash.2d 708, 715-16, 801 P.2d 948 (1990).
[7] State v. Jordan, 106 Wash.App. 291, 299, 23 P.3d 1100, review denied, 145 Wash.2d 1013, 37 P.3d 291 (2001); State v. McDonald, 138 Wash.2d 680, 693, 981 P.2d 443 (1999) (we review the trial court's decision on the reliability of a statement against penal interest for an abuse of discretion).
[8] Roberts, 142 Wash.2d at 499, 14 P.3d 713.
[9] Roberts, 142 Wash.2d at 481-82, 14 P.3d 713.
[10] Roberts, 142 Wash.2d at 483, 14 P.3d 713.
[11] Roberts, 142 Wash.2d at 483, 14 P.3d 713.
[12] Roberts, 142 Wash.2d at 491-92, 14 P.3d 713.
[13] Roberts, 142 Wash.2d at 492, 14 P.3d 713.
[14] Roberts, 142 Wash.2d at 492, 14 P.3d 713 (citing Williamson, 512 U.S. at 603, 114 S.Ct. 2431 and United States v. Sposito, 106 F.3d 1042, 1049 (1st Cir.1997)).
[15] Roberts, 142 Wash.2d at 499, 14 P.3d 713.
[16] Roberts, 142 Wash.2d at 499, 14 P.3d 713.
[17] (Italics ours.)
[18] U.S. Const. Amend VI; Wash. Const. Art I, sec. 22; see State v. Hudlow, 99 Wash.2d 1,14, 659 P.2d 514 (1983) (Both the Sixth Amendment of the United States Constitution and article I, section 22, amendment 10 of the Washington Constitution guarantee criminal defendants the right to present evidence in their own defense.).
[19] Chapman v. California, 386 U.S. 18, 21-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (an error of constitutional magnitude cannot be deemed harmless unless it is "harmless beyond a reasonable doubt."); State v. Maupin, 128 Wash.2d 918, 928-29, 913 P.2d 808 (1996).
[20] State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997).
[21] Roberts, 142 Wash.2d at 496, 14 P.3d 713.
[22] Roberts, 142 Wash.2d at 496, 14 P.3d 713 (citing McDonald, 138 Wash.2d at 693, 981 P.2d 443 (trial court's decision on reliability of ER 804(b)(3) statement reviewed for abuse of discretion)).
[23] McDonald, 138 Wash.2d at 694, 981 P.2d 443; Whelchel, 115 Wash.2d at 722-25, 801 P.2d 948.
[24] Roberts, 142 Wash.2d at 497, 14 P.3d 713.
[25] 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (cited by Roberts for the proposition that a defendant has a constitutional right to present hearsay evidence in certain circumstances).
[26] 107 Wash.2d 745, 749, 733 P.2d 517 (1987) (cited by Roberts for the proposition that the rules of evidence do not "circumscribe the limits of constitutional rights").
[27] See McDonald, 138 Wash.2d at 694, 981 P.2d 443 (character of other participant in three murders suggested the opposite of trustworthiness given other participant's "confession to law enforcement that he participated in the murders and the nature of the crimes charged.").
[28] See Whelchel, 115 Wash.2d at 722, 801 P.2d 948.
[29] See Whelchel, 115 Wash.2d at 723, 801 P.2d 948.
[30] Roberts, 142 Wash.2d at 496, 14 P.3d 713 (rejecting the State's argument that admitting portions of the confession would allow the defendant to mislead the jury because the entirety of the confession might have been admissible under ER 106).
[31] Roberts, 142 Wash.2d at 498, 14 P.3d 713.
[32] Roberts, 142 Wash.2d at 498, 14 P.3d 713.
[33] Roberts, 142 Wash.2d at 498, 14 P.3d 713.
[34] RCW 2.06.040.