# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70235-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY L. THOMPSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 17, 2014 |
| | ) | |

LAU, J. — Anthony Thompson appeals his conviction for one count of second degree promoting prostitution. He argues that the trial court abused its discretion when it excluded Areanna Morrow's out-of-court statements denying his involvement in her prostitution activities. He contends these statements were properly admissible under the hearsay exception for statements against interest, ER 804(b)(3), and that excluding these statements prevented him from presenting a defense, amounting to constitutional error. Because the trial court properly excluded Morrow's statements on lack of reliability grounds and any error was harmless beyond a reasonable doubt, we affirm the judgment and sentence.

FACTS

While investigating Anthony Thompson for possible involvement in arranging dogfights, King County sheriff deputies discovered evidence of promoting prostitution. An examination of Thompson's cell phone Internet history revealed regular access to the adult advertisement site BackPage.com. The history included access to web pages that allow an individual to create an account on the web site, manage advertisements, and pay for posting advertisements. The account advertised an individual named "Sunny Day," a nickname for Areanna Morrow. The photos of Morrow posted on BackPage.com matched images of Morrow taken on Thompson's cell phone. Thompson's cell phone also had a long history of text messages to and from the phone number advertised on Morrow's BackPage.com account. The texts involved maintenance of Morrow's advertisement on BackPage.com, updates regarding customers—including locations and prices, requests to be picked up after transactions, and requests for more condoms.

An examination of Thompson's personal computer also revealed a history of access to Morrow's advertisement page on BackPage.com. The history indicated management and payment for Morrow's advertisement site. The e-mail address associated with Morrow's BackPage.com site—antgroove@yahoo.com—was located on Thompson's computer. "Ant Groove" is Thompson's nickname. Report of Proceedings (Jan. 29, 2013) (RP) at 96. While Thompson was incarcerated awaiting

trial, he made several phone calls to Morrow during which he continued to manage her prostitution activities.[1]

The State charged Thompson by amended information with one count of first degree unlawful possession of a firearm, one count of second degree promoting prostitution, and four counts of animal fighting. Thompson pleaded guilty to the four counts of animal fighting. During a jury trial on the remaining counts, Thompson sought to introduce statements made by Morrow under the hearsay exception for statements against interest under ER 804(b)(3). Thompson offered three of Morrow's statements: (1) her statement denying that "Thompson helped her to facilitate dates," (2) her statement that "she did not pay [Thompson] any of the money that she earned from those dates," and (3) her statement that "she typically charges $150 or $200 for an hour." The trial court excluded the statements on the ground the statements lacked trustworthiness. The jury convicted Thompson of first degree unlawful possession of a firearm and second degree promoting prostitution. Thompson appeals his second degree promoting prostitution conviction.

ANALYSIS

Standard of Review

"Decisions involving evidentiary issues lie largely within the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion." State v. Castellanos, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997).

> Under an abuse of discretion standard, the reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported

---

[1] These phone calls are discussed in more detail below.

in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.'"

State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

Morrow's Statements Against Interest

ER 804(b)(3) provides that hearsay statements against penal interest are admissible if (1) the declarant is unavailable to testify, (2) the statements so far tend to expose the declarant to criminal liability that a reasonable person in the same position would not have made the statement unless convinced of its truth, and (3) corroborating circumstances clearly indicate the statement's trustworthiness.

State v. Whelchel, 115 Wn.2d 708, 715–16, 801 P.2d 948 (1990).

First, we conclude that Morrow was unavailable for purposes of ER 804(b)(3). A witness is unavailable if the witness "[i]s absent from the hearing and the proponent of his statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." ER 804(a)(5). "The party offering the out-of-court statement of a witness beyond the legal reach of a subpoena should at least be required to represent to the court that it made an effort to secure the voluntary attendance of the witnesses at trial." Rice v. Janovich, 109 Wn.2d 48, 57, 742 P.2d 1230 (1987).

Thompson made several unsuccessful attempts to locate Morrow. An investigator inquired into all of Morrow's known addresses and phone numbers, without success. The State claims that nothing in the record shows that Thompson tried to subpoena Morrow. However, a subpoena would be pointless without any knowledge of Morrow's whereabouts. State v. DeSantiago, 108 Wn. App. 855, 33 P.3d 394 (2001) (witness who could not be located held unavailable), aff'd in part, rev'd in part on other grounds, 149 Wn.2d 402, 68 P.3d 1065 (2003). The court noted it would be pointless to

try to serve subpoenas on witness who could not be located.). In any event, we may assume that Morrow was unavailable because, as the State concedes, Morrow could have asserted her privilege against self-incrimination even if Thompson had been able to locate her. See State v. Jordan, 106 Wn. App. 291, 300, 23 P.3d 1100 (2001) ("[The witness] was unavailable to testify because to do so he would have had to revoke his privilege against self-incrimination.").

Second, we conclude that only one of the three statements he offered was against Morrow's penal interest. In State v. Roberts, 142 Wn.2d 471, 14 P.3d 713 (2000), the court rejected the "whole statement" approach, instead stating that trial courts must focus solely on "the inculpatory portions . . . and redact the narrative . . . ." Roberts, 142 Wn.2d at 492 (citing Williamson v. United States, 512 U.S. 594, 603, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994)). Accordingly, ER 804(b)(3) "'does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.'" State v. Anderson, 112 Wn. App. 828, 835–36, 51 P.3d 179 (2002) (quoting Roberts, 142 Wn.2d at 492). Here, Thompson offered two statements that Morrow made to the investigating detective:

> DET: Okay. Does [Thompson] ever set up any dates for you?
> [Morrow]: No.
> . . . .
> DET: You ever give him any of the money that you make?
> [Morrow]: No.

Separated from the broader narrative of the interview, neither of these statements inculpates Morrow. For ER 804(b)(3) testimony to be admissible, the declarant's statements must "so far tend to expose the declarant to criminal liability that a reasonable person in the same position would not have made the statement unless

-5-

convinced of its truth . . . ." <u>Whelchel</u>, 115 Wn.2d at 716. We cannot say that these statements, on their own, expose Morrow to criminal liability. The third statement offered by Thompson was Morrow's statement that she charges $150 to $200 dollars an hour.[2] This statement amounts to an admission of engaging in prostitution and is therefore against Morrow's penal interest.

However, even if we assume that all of Morrow's statements were against her interest, the lack of corroborating circumstances weighs against admission. A trial court still has the discretion to exclude inculpatory statements made by an unavailable declarant under ER 804(b)(3) if the statements are unreliable. <u>See</u>, <u>e.g.</u>, <u>Roberts</u>, 142 Wn.2d at 496. There are nine factors we consider when evaluating the reliability of such statements:

> (1) Was there an apparent motive for [the] declarant to lie?
> (2) What was the declarant's general character?
> (3) Did more than one witness hear [the] declarant's statement?
> (4) Was the statement made spontaneously?
> (5) Did the timing of the statement [] and the relationship between [the] declarant and [the] witness suggest trustworthiness?
> (6) Does the statement contain an express assertion of past facts?
> (7) Did the declarant have personal knowledge of the identity and role of the crime's other participants?
> (8) Was the declarant's statement based upon faulty recollection?
> (9) Was the statement made under circumstances that provide reason to believe the declarant misrepresented the defendant's involvement in the crime?

<u>Anderson</u>, 112 Wn. App. at 838 (alterations in original). Not all of these factors must be present for the statements to be admissible. <u>State v. Anderson</u>, 107 Wn.2d 745, 753, 733 P.2d 517 (1987). When ER 804(b)(3) statements against interest are offered by a

---

[2] For some reason, this statement is not in the transcript of Morrow's interview with the detective. The only mention of this statement is in the detective's certification for determination of probable cause.

defendant, there is a presumption of admissibility even if these reliability factors are evenly balanced. Jordan, 106 Wn. App. at 301; see also Roberts, 142 Wn.2d 497–99. The factors here, however, are not evenly balanced. They weigh against admission.

Regarding the first factor, Morrow had motivation to lie for Thompson. Thompson argues that Morrow lacked any motive to lie for him because she "knowingly exposed herself to criminal liability [and] therefore had a great deal to lose . . . ." Br. of Appellant at 14. But this ignores Morrow's close relationship with Thompson. Morrow admitted to police that Thompson was her boyfriend and that she had been living with him for one year and five months. Morrow told Thompson, "I love you" during a phone call while Thompson was incarcerated.

Morrow also had a financial motive to lie for Thompson. Morrow admitted that Thompson paid the rent at their residence and she was only responsible for the electricity bill. Further, Morrow's communications with Thompson show that she depended on Thompson in order to get customers for her prostitution activities. For instance, on another phone call with Thompson, Morrow suggested that she lacked customers in part because she did not know how to maintain her internet advertisement. Similarly, text messages between Thompson and a phone number associated with the name "Sunny"—Morrow's nickname—show that Morrow relied on Thompson for her prostitution activities. In one exchange, Morrow asks Thompson if an ad has been posted on line because she did not "want to walk the highway." RP at 127. Thompson responded that an ad would be posted for "outcalls."[3] RP at 127–28. Text messages also showed that Thompson helped customers connect with Morrow and that he picked

---

[3] An "outcall" is when the prostitute goes to the customer's location.

-7-

Morrow up after dates. At trial, the investigating detective described one such

exchange:

> From the top five [text] messages, the overall content is that [Thompson's] cellphone is sending out a phone number to [Morrow], the prostitute, she gets it, and then replies back later [when] they are done. Received $80. Come and pick me up. The outgoing message is 80 for three [customers] with several question marks. And as we can read the incoming is nah, only two this time.

RP at 139. This contradicts Morrow's statement to police that Thompson did not set up

dates for her or assist in her prostitution activities. We conclude that Morrow's close

relationship with Thompson and her financial dependence on him provided the

motivation to lie. The first factor weighs against admission.

We also conclude that the second factor—whether the declarant's general

character suggests trustworthiness—weighs against admission. Thompson argues that

because Morrow "never changed her story about engaging in prostitution on her own,"

the second factor weighs in favor of her trustworthiness. Br. of Appellant at 14. But

overwhelming evidence at trial contradicted Morrow's story. Numerous communications

between Morrow and Thompson indicated that Thompson assisted in Morrow's

prostitution activities. Morrow also gave police misleading statements about

Thompson's involvement with dogfighting. Morrow claimed that she saw a video on

Thompson's phone showing a dogfight, but she did not see Thompson in the video.

When the investigating detective saw the video, however, he immediately recognized

Thompson, particularly because of a distinctive gold chain Thompson was wearing in

the video that was also found on Thompson when he was arrested. When the detective

asked Morrow if one of the dogs, "Handsome," was vomiting because of injuries,

Morrow responded that it was "just stress." But a follow-up investigation with the

veterinarian revealed much worse: "[Handsome] had fresh injuries to his legs, head, muzzle, and trunk. When found this dog was not responsive to commands and was in an almost catatonic state. . . . 'Handsome' had to be euthanized at the veterinarian due to complications (shock) from the severe nature of [his] wounds." When the detective asked Morrow about a book on dogfighting found in Thompson's apartment, Morrow insisted that the book belonged to Thompson's brother, not Thompson. But Morrow did not know the brother's name. Finally, Morrow has a prior conviction for making a false statement to a public servant. We conclude that the second factor weighs against admission.

The parties do not dispute that the third factor weighs in favor of admission because Morrow's statements were recorded.

We also conclude that the fourth factor weighs against admissibility because Morrow's statements were not spontaneous. Thompson claims, "Although Morrow's statements were made in response to police questioning they were nonetheless volunteered." Br. of Appellant at 14. However, we held that statements made during custodial police interrogation lacked spontaneity for purposes of ER 804(b)(3) reliability. Anderson, 112 Wn. App. at 840.

For similar reasons, we conclude that the fifth factor also weighs against admissibility. As discussed above, Morrow's relationship with Thompson undermines trustworthiness. Nor does the timing of the statements suggest trustworthiness. "Statements to the police in an adversarial situation typically do not have the trustworthiness associated with remarks to friends." Anderson, 112 Wn. App. at 840.

The parties agree that the sixth factor weighs in favor of admissibility because Morrow's statements contain express statements of past facts.

The State concedes that the seventh factor weighs in favor of admissibility because of Morrow's knowledge of Thompson and his alleged involvement in criminal activity.

Regarding the eighth factor, some of Morrow's responses indicate her recollection was faulty. Morrow did not know Thompson's brother's name even though she had been with Thompson for over a year. Morrow also gave different accounts of the locations of two different dogs on the day police arrived. Morrow claimed Thompson was not in the apartment with her when police arrived even though that is where police found him. We conclude this factor weighs against admissibility.

Finally, we conclude the ninth factor also weighs against admissibility because Morrow's statements were made under circumstances that provide reason to believe she misrepresented Thompson's involvement in her prostitution activities. As discussed above, Morrow's close relationship and financial dependence on Thompson provided a motive to lie for him. Further, the overwhelming evidence of Thompson's involvement in Morrow's prostitution activities contradicts her statements.

In sum, the trial court properly determined the reliability factors weigh against admission.

Thompson argues that exclusion of Morrow's statements violated his state and federal constitutional rights to present a defense and that therefore this court should apply the test for constitutional harmless error. State v. Jones, 168 Wn.2d 713, 724, 230 P.3d 576 (2010) ("[E]rror of constitutional magnitude can be harmless if it is proved

to be harmless beyond a reasonable doubt." (citing <u>Chapman v. California</u>, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). But even assuming without deciding an error of constitutional magnitude, the error, if any, is harmless beyond a reasonable doubt given the overwhelming record evidence of Thompson's guilt.

## CONCLUSION

The trial court properly excluded Morrow's statements denying Thompson's involvement in her prostitution activities. Even assuming constitutional error, any error was harmless beyond a reasonable doubt given the overwhelming evidence of guilt. We affirm the judgment and sentence.

WE CONCUR: